Jay Owens v. The State.

No. 1435. Decided June 1, 1898.

1. **Rape—Charge on the Weight of Evidence.**

On a trial for rape, where the evidence made it uncertain as to the date of the offense as fixed by the main State's witnesses, it was error for the court in its charge to suggest to the jury that they should find defendant guilty if the occurrence took place between certain dates as testified by said witnesses. This was an infringement upon the province of the jury, where the witnesses, though specifying the dates, made the date uncertain by positively connecting it with other circumstances which positively contradicted them as to the date.

2. **Same.**

On a trial for rape, a charge of court which told the jury that "there has been evidence introduced in this case to show that the defendant raped the said P. O. at various dates and places," was erroneous, in that it was very suggestive to the jury of the view the court entertained of the testimony, and was calculated to influence the jury by imparting to them the view of the court on the subject.

3. **Same—Evidence.**

On a trial for rape, it was error to permit a witness for the State to testify, over objections of defendant, that upon one occasion defendant, in the presence of the prosecutrix and the other members of his family, stated to witness that he did not

care if he .(witness) had carnal intercourse with every one of them. Such evidence had no bearing upon the charge against defendant.

**4. Same.**

On a trial for the rape of his own daughter, while acts of cruelty on the part of defendant towards her and perhaps other members of his family in her presence, bearing on the issue of force, are competent and admissible, it is certainly incompetent and inadmissible to prove the facts pertaining to an isolated case of cruelty by defendant towards another one of his children, not shown to have been in the presence of or known to the prosecutrix.

**5. Rape—"Force"—Charge of Court.**

On the trial of a father' for rape upon his daughter, it is essential to the sufficiency of the charge of the court that it should, in effect, instruct the jury that they must be satisfied beyond a reasonable doubt that defendant, by force and threats, compelled the prosecutrix to submit to carnal intercourse with him; that she must have put forth her utmost resistance to prevent the act, considering the relative size and strength of the parties, the conditions surrounding them, and other circumstances of the case; and that if they believed the prosecutrix consented to have carnal intercourse with defendant, or if they entertained a reasonable doubt as to whether or not she did not consent, that then they should acquit defendant.

APPEAL from the District Court of Williamson. Tried below before Hon. R. E. BROOKS.

Appeal from a conviction for rape; penalty, imprisonment for life in the penitentiary.

This is the second appeal in this case. See Owens v. State, 35 Texas Criminal Reports, 345.

The important facts and questions in the case can be easily gathered from the briefs of counsel and from the opinion below.

*Makemson & Fisher* and *R. A. John,* for appellant.—1. The facts are insufficient, as it appears from the testimony that the offense, if any, was committed more than one year before the indictment was returned; that if any offense was committed it was between the 25th of December, 1893, and the 1st of January, 1894; that all of the undisputed evidence fixes this as the date.. This time is fixed by the presence of Dorsey Taylor at Jay Owens' house, as follows:

The district attorney admits, as part of the evidence of this case, that Dorsey Taylor came to defendant's in December, 1893, and remained there until March, 1894.

Pearl Owens testified, that she does not remember anything about dates or occasions. She, however, says that it was between Christmas, 1894, and January, 1895, but that Dorsey Taylor was there. In reply to the question by the district attorney, "Did your father have intercourse with you any other Christmas between Christmas and New Year before that time?" she answered, "I don't know; I never paid much attention; I don't think I could be mistaken about Dorsey Taylor being there; Dorsey Taylor was there at that time, and that was the Christmas I have been telling about. Sam and Dorsey came in while papa and I were in bed; Dorsey came in the room and got a key from under father's head while I was in bed with him."

Sam Owens testified, that the only time he saw his father having con-

nection with Pearl, Dorsey Taylor was there, and between Christmas and New Year; the other some time before Christmas. Both of these witnesses contradict themselves repeatedly, but are positive as to the time they speak of, and in fixing the time of the rape, that Dorsey Taylor was there. They are positive, first, that the alleged rape occurred between Christmas and New Year; second, that Dorsey Taylor was there when it did occur; third, that he came there before Christmas and quit in the spring following; fourth, that he was not there again until the summer following, when he stayed all night and left the next morning.

Warren Moss, a witness for the State, says that he, the witness, went to Jay Owens' late in the fall of 1893, in cotton-picking time, and left there after Christmas, 1893, or January 1, 1894; that he left Dorsey Taylor there when he left.

It will be seen that all of the State's witnesses who testify about this matter fix the time of this rape as the time when Dorsey Taylor was there. There was no question about this fact until the defendant had finished his testimony and shown conclusively, even by the admission of the district attorney, that Dorsey Taylor was there between Christmas, 1893, and January, 1894, and that he was not there during any other Christmas.

After this fact was conclusively shown, those two children, Pearl Owens and Sam Owens were brought back upon the witness stand by the State and permitted to swear in behalf of the State that the Christmas they had been swearing about was a year after Warren Moss was there; thereby showing an overzealous desire upon their part not only to fasten guilt upon their father, but a very keen knowledge of the statute of limitation. Of course we do not believe for a moment that anyone with the knowledge of the effect of this testimony upon the statute of limitation suggested the necessity of a change in the testimony of these children, but what we do mean to suggest is that these children were remarkably learned in the law for children so young.

Dorsey Taylor, witness for defense, says: "I began work for Jay Owens 1st of January, 1894; I went to his house in December, 1893, and remained there until about the middle of March, 1894; I never worked for Jay Owens but this one time; I went from Jay Owens' to Womack's and worked with the Womacks until the summer of 1894. After that, on my way to Coleman County, some time in July, 1894, I stayed all night at Jay Owens'. On Christmas, 1894, and New Years, 1895, I was not at Jay Owens', but in Coleman County."

Dorsey Taylor's testimony is corroborated by Kuykendall and the three Womacks.

2. Because of error in the charge of the court.

The court had no right to elect for the jury which of the offenses charged, and require them to first find the defendant not guilty of rape before considering that of incest. While these offenses may be kindred, rape does not consist of degrees, embracing incest. They are separate and distinct offenses. For the court to require the jury to first pass upon

the question of rape was a suggestion to the jury that the court laid most stress upon this count of the indictment, and to that extent impress the jury.

The court in the ninth paragraph of the charge uses the following language: "There has been evidence introduced in this case to show that the defendant raped the said Pearl Owens at various dates and places." This is a material affirmative finding of fact by the court. Under this instruction the only thing that the jury is required to do is to find when and where the rape was committed,—not to find that a rape had been committed, but to say which one of the many different rapes committed by the defendant he should be punished for. It may be that the court did not intend to use the strong language used in the charge; it may have been the intention of the court to say that certain evidence had been admitted for the purpose of enabling the jury to find so and so; but certainly it is not in the power of the court, by its instructions, to convey to the mind of the jury that the court thinks the defendant guilty.

The court uses the word rape, which means, first, that the defendant actually had carnal knowledge of Pearl Owens; second, that this knowledge was obtained by force or threats; third, that the act was against her consent; fourth, not only once, but many times. If the charge, regardless of the good intentions of the court, thus impressed the jury, the charge is erroneous, and materially so.

This error is intensified by paragraphs 11, 12½, and 20, of the charge. The eleventh paragraph is as follows: "You can not convict the defendant in this case for any transaction except that relied upon by the State for a conviction, and claimed to have occurred between December 25, 1894, and January 1, 1895." What transactions? Why, any of these rapes spoken of by the court in the ninth paragraph of the charge. "And claimed to have occurred between December 25, 1894, and January 1, 1895." Who claims it? It certainly can not be that the defendant claims it under his plea of not guilty. The claim can not be based upon the evidence, because the great preponderance is against it,—against this claim. By looking to paragraphs 12½ and 20 we can find the basis of this claim. It is claimed by the court in those two paragraphs of its charge as follows: "The indictment in this case was filed on July 10, 1895. Now, if you believe the transactions testified to by the witness Pearl Owens and Sam Owens as having occurred at the defendant's home, in Williamson County, on the date between December, 1894, and January 1, 1895, did occur as testified by said witness, but you further find that such transaction occurred between December 25, 1893, and January 1, 1894, you will find him not guilty," etc. That is, before the jury can acquit, they must believe that this transaction, which the court says that Pearl and Sam testified as having occurred in December, 1894, and which the jury are required to find true, must be found false. The same error exists in the twentieth paragraph, only more glaring. Under these different instructions very little is left for the jury to decide.

3. Because of the admission of improper, illegal, and incompetent evidence upon the trial of the case.

The court ought not to have admitted the testimony of the witness Sam Queen. In reply to a question from the district attorney, this witness says: "I never saw him whip his children grievously, myself; but I have seen him whip them; and I saw him knock his little boy Walter off the haystack or fodder-stack, and jump on him and stamp his chest in with his boot-heel." We are at a loss to understand why this testimony was admitted. It does not in the least tend to prove that Jay Owens raped Pearl; it could not have been admitted for the purpose of showing his dominion over her. There is no evidence that she ever heard of it. In fact, it does not appear at what time this occurred, whether before or after the alleged rape. Its only effect would have been to enrage the jury and arouse their passion and prejudice against the defendant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of rape, and his punishment assessed at imprisonment in the penitentiary for life; hence this appeal.

The indictment contained four counts,—the first for incest and the last for rape. The second and third counts were eliminated, and the case tried on the first and fourth counts, and the jury found him guilty, under the fourth count, for rape.

The proof on the part of the State showed that the prosecutrix, Pearl Owens, was the daughter of appellant, Jay Owens, and she was at the time of the alleged offense about 14 years of age. Her father lived on a farm in the country, and his family consisted of his wife, himself, and several children, among whom were the prosecutrix, Pearl Owens, and a son named Sam Owens. The prosecutrix testified to a number of acts of intercourse between her father and herself, stating that she was coerced to consent to copulate with him; that he threatened to kill her if she did not consent; that she was afraid of him. Prosecutrix testified specifically to an act of intercourse between Christmas and New Year of 1894. She said that it was in 1894 or 1895, she did not know which, but she was certain it was the time that Dorsey Taylor was living at her father's and working there. She also stated that her father had had intercourse with her about fifteen times before that. She testified to several particular occasions,—one time when he took her out of the field into the woods. The Christmas she alludes to she states that she slept in the same room with her father and mother; that her mother was in the habit of going out and getting breakfast, and early one morning her mother went out in the cook room to get breakfast; that she was in her bed, and her father called her to come and get in bed with him; that she came, and he made her lie down on his bed with him, and that he copulated with her; that he made her lay still; that he pulled her hair and choked her; that after he got through she got up, and went and told her mother about it. Her

brother Sam corroborates her as to this transaction. He also says that it was the time Dorsey Taylor was there. Dorsey Taylor was introduced, and testified that he was not there during Christmas, 1894 or 1895; that he came to Jay Owens' place in December of 1893, was there during Christmas, 1893, and remained there until March, 1894, when he went elsewhere to work, and he had not lived at Jay Owens' since; that he came by there once in the summer of 1894, on his way to Coleman County, and stayed all night there. Other witnesses testified for the defendant, and their evidence is to the effect that Dorsey Taylor was not at Jay Owens' during Christmas, 1894, and the early part of 1895. The testimony to this effect on the part of the defendant was so strong that the State admitted that Dorsey Taylor was not at Jay Owens' the Christmas of 1894, but was there the Christmas of 1893. The State then placed the prosecutrix back on the stand, and she testified that appellant was arrested in the summer of 1895, and that the act of intercourse about which she testified was the Christmas before that, which was the Christmas of 1894. The indictment was filed on the 10th of July, 1895; and the question of the date of the alleged offense becomes material, in view of the foregoing testimony on the point and the charge of the court on that subject.

On this point the court instructed the jury as follows: "The State has elected to rely for a conviction in this case upon the offense claimed by the State to have been committed by the defendant at his home in said Williamson County between December 25, 1894, and January 1, 1895. You are therefore instructed that the State is confined to said transaction for a conviction in this case, and the evidence introduced before you as to the commission, or attempted commission, of the offense of rape by the defendant upon any other occasion than that so relied upon by the State, which is between December 25, 1894, and January 1, 1895, will only be considered by you, together with all the other circumstances in the case, in determining the sufficiency of the force and threats used," etc. And again: "You can not convict this defendant in this case, if at all, for any prosecution except that relied on by the State for a conviction, and claimed to have occurred between December 25, 1894, and January 1, 1895." And in another place: "The indictment in this case was filed in this court on July 10, 1895. Now, if you believe the transaction testified to by the witnesses Pearl and Sam Owens, as having occurred at defendant's home in Williamson County, on the date between December 25, 1894, and January 1, 1895, did occur as testified by said witnesses, but you further find that such transaction occurred between December 25, 1893, and January 1, 1894, instead of between December 25, 1894, and January 1, 1895, or if you have a reasonable doubt" on this subject, etc., "you will acquit the defendant." It is contended by appellant that these charges were on the weight of the testimony. For instance, it is contended by appellant that it was incompetent for the court to inform the jury that the State relied for a conviction upon the offense claimed to have been committed by the defendant, at his home in Wil-

liamson County, between December 25, 1894, and January 1, 1895; that same was a suggestion to the jury that the State's witnesses had unquestionably testified to that specific time, and was so a charge upon the weight of testimony. And appellant especially urges that it was improper for the court to tell the jury that the witnesses Pearl Owens and Sam Owens testified that the offense occurred at defendant's home in Williamson County between December 25, 1894, and January 1, 1895; that this question of date was the very matter in issue, and, when the evidence left it uncertain as to the date fixed by these witnesses, their own testimony was ambiguous, and that it was improper for the court to tell the jury that they had testified to that certain day. In view of the fact that these witnesses, especially the prosecutrix, testified positively that the transaction about which they testified occurred at the time when Dorsey Taylor was there, and they used this circumstance to fix the date, and that they were otherwise uncertain when it did occur, it would seem that the jury should have been left untrammeled by any suggestions on the part of the court as to what they had testified to on that subject. If the court had merely charged the jury, in general terms, if they believed beyond a reasonable doubt that appellant had had carnal intercourse by force with prosecutrix, within a year next before the finding of the indictment, to find him guilty, and if, on the contrary, they did not believe beyond a reasonable doubt that said act of intercourse did occur within a year next before the finding of the indictment, to find him not guilty, this would have been all that the court would have been required to do on this subject. When the witness was apparently uncertain about the date, and only identified the time by other circumstances, the jury should not have been informed that the prosecutrix and Sam Owens had testified to a particular date. We think this was infringing on the province of the jury. The charges given were excepted to, and a charge was requested on this subject free from the vice contained in the court's charge.

Appellant also complains that the court in its charge told the jury that "there has been evidence introduced in this case to show that the defendant raped the said Pearl Owens at various dates and places." It is urged by appellant that this was a charge upon the weight of the testimony. He claims in this respect that, even if it be conceded that the act of intercourse is proven, the proof still left exceedingly doubtful other elements essential to constitute rape; and that the court, under the circumstances of the case, should not even have suggested to the jury what the evidence tended to prove, much less to tell them that there was evidence in the case to show that the defendant raped said Pearl Owens at various dates and places. To our minds, this instruction was very suggestive to the jury of the view the court entertained of the testimony, and we believe it was calculated to influence the jury, as imparting to them the view of the court on the subject.

When the witness Warren Moss was on the stand, for the State, over the appellant's objection, the State was permitted to prove by him that

on one occasion, in the presence of Pearl and the other members of the family, defendant stated that he did not care if he (witness) "f——d every one of them." His testimony was objected to as immaterial, irrrelevant, and calculated to prejudice the minds of the jury against the defendant, without in any manner tending to prove the crime of rape. This occasion does not appear to have had anything whatever to do with the offense alleged against appellant. The conversation is not shown to have been contemporaneous in point of time. We fail to see what bearing it had upon either the charge of rape or incest. It was calculated to show that appellant was possessed of a beastly, brutish mind, and that he was willing to see his daughter prostituted; but this would not tend to show that he had raped her, or even that he had had intercourse with her, but it was of a character to prejudice appellant before the jury.

Sam Queen was introduced as a witness, and the State was permitted to prove by him that he had seen appellant whip his children. On one occasion he saw him knock his little boy Walter off of the haystack, and jump on him, and stamp his chest in with his boot-heel. Now, it was competent for the State to show, by any legitimate testimony, that appellant mistreated the prosecutrix, and that he was in the habit of whipping her, and treating her cruelly, as bearing on the issue of force; that is, indicating his authority and power over his daughter to compel her, by force and threats, to submit to carnal intercourse with him. Possibly it might have been permissible to prove that appellant was in the habit of treating his children cruelly in her presence, or within her knowledge; but this testimony appears to be of an isolated character. She was not present when appellant knocked his little boy Walter off of the haystack, and stamped his chest in with his boot-heel, or to have known of that circumstance, and, without some such testimony of knowlededge on her part, we fail to see what relevancy or pertinency it had. In a case of this character, the trial court should be careful in the admission of any but legitimate evidence, as it can rarely happen that a jury requires any outside incentive to enable them to properly discharge their duty. Testimony of this character, having no relevancy to the case, is likely to inflame the minds of the jury against appellant, to regard him as a brute, and that he ought to be punished on general principles; and, if the case is otherwise weak, such testimony is liable to turn the scale against an innocent man.

We would remark that the circumstances of this case are rather peculiar. If the testimony of the prosecutrix and her brother Sam is to be believed, unquestionably appellant was in the habit of having intercourse with the prosecutrix, his daughter. This continued for a length of time, and with the knowledge of the mother of the prosecutrix. The question of force vel non was an important issue in the case. The charge of the court in this respect should have been carefully guarded, and the jury should also have been specifically instructed that, if prosecutrix consented to the acts of intercourse, it would not be rape. The jury were thoroughly instructed as to the elements constituting rape, and then they

were charged with reference to the State's case; but they were nowhere told, on behalf of defendant, that they must be satisfied beyond a reasonable doubt that appellant, by force and threats, compelled her to submit to carnal intercourse with him; that she was required to put forth her utmost resistance to prevent him from doing so, considering the relative size and strength of the parties, the conditions surrounding them at the time, and other circumstances of the case; and, moreover, if they believed that the prosecutrix consented to have carnal intercourse with appellant, or if they entertained a reasonable doubt as to whether or not she did consent, that then they should acquit appellant. Under the circumstances of this case, we think such a charge was imperatively called for and should have been given by the court, in order to adequately guard the rights of appellant. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.