### RUFUS MARTIN v. THE STATE.

No. 2830. Decided June 24, 1904.

**1.—Charge of the Court—Murder—Manslaughter.**

Where the evidence showed that the defendant was guilty of murder upon express malice, there was no necessity to charge on manslaughter in connection with murder in the second degree, the latter being justified upon the circumstantial evidence in the case.

**2.—Jury and Jury Law—Conscientious Scruples.**

Where three jurors were excused for cause by the State, on account of conscientious scruples to inflict the death penalty in case of circumstantial evidence, there was no error.

**3.—Same—Conclusions Established—Bill of Exceptions.**

Where the bill of exceptions fails to show whether the jurors, claimed to have been subject to challenge for cause, on account of having conclusions established were peremptorily challenged or whether they sat upon the jury, the same shows no error.

**4.—Evidence—Murder in Perpetration of Robbery.**

Where the evidence shows that according to defendant's confessions that he was with T. and the latter shot deceased from ambush with defendant's pistol and that the killing was done for the purpose of robbery and evidently well planned, the same sustains the conviction and the death penalty.

#### ON REHEARING.

**5.—Charge of the Court—Accomplice Testimony.**

Where the evidence showed that defendant could not be guilty of a lesser degree of culpable homicide than murder, it was not error to charge that the ques-

tion of accomplice depended upon the fact whether the killing by the accomplice constituted murder and there was no necessity to allude to other character of culpable homicide, there being no exception that the charge was on the weight of the evidence.

**6.—Same—Killing After Robbery—Express Malice.**

If as a matter of fact appellant robbed deceased by the use of a pistol and killed him to destroy his testimony and the evidence of his crime of robbery, it would be murder upon express malice and the jury could not have been misled by the court's charge.

Appeal from the District Court of Tarrant.   Tried below before Hon. Irby Dunkin.

Appeal from a conviction of murder in the first degree; penalty, death.

In addition to the facts stated in the opinion, and among the many circumstances in evidence, it was shown that defendant and Jordan Thompson had been picking cotton for the deceased, Charles Swackhammer, and on the day before the homicide had a conversation with deceased, in which the latter told them that he intended to take his cotton to market at Arlington the following day; that he would take it that day, if it were not so late; that he feared returning home at night, suggesting the thought that he feared being robbed.   It was shown that defendant and Thompson lived a few miles probably from deceased at one Brockman's, where they went Tuesday, staying there that night, and that defendant left Brockman's in the forenoon of the next day, saying he was going pecaning, or to Dallas, and carried his pistol, which was afterwards found on him.   That deceased started to Arlington with his cotton Wednesday morning, was seen there, sold his cotton and was returning home, when defendant was seen with him in deceased's wagon, standing or sitting behind him.   That they were seen together that way, along the road by several persons and at Culp's store about dark; that there deceased got out of his wagon, went into the store and bought a few dollars' worth of groceries, and took some $40 or $50 in money, mostly greenbacks, out of his pocket, in making payment for the groceries, and then put the rest of the money back into his pocket; that defendant was seen looking at deceased when he handled and showed the money, but that defendant remained in the wagon; that deceased handed defendant 45 cents, which was a balance due him for picking cotton; that defendant inquired of deceased when he should drive on, and the latter replied that he would go on in a few moments; that they left together as they had come, in the wagon of deceased; they were seen together in the same way on the road to the home of deceased within a mile or two of said home, and a short time before the wagon and team reached the house of the deceased with the dead body of deceased.   Shortly before the team reached the house of deceased, three shots were heard in the direction, where was also heard the rumbling of a wagon on the road over which deceased was going home; also cries of distress and the moving of a wagon and team towards the house of deceased; then the cries of the wife of deceased as she discovered

her husband's dead body in his wagon when it reached home, which was early on Wednesday night of the killing.

The State also introduced in evidence threats of defendant against deceased, his contradictory statements with reference to the murder; his admission that he was in the wagon of deceased; his statement that he saw Thompson fire the shot at deceased out of the cane; that he divided with Thompson the money they took from deceased; also his contradictory statements as to where he got the money found on him; also contradictory statements of defendant as to his pistol, etc.

*Jas. S. Davis* and *W. T. Simmons,* for appellant..

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The extreme penalty of the law was given appellant by the jury under a charge of murder. He discusses two errors as grounds for reversal: first, the court's charge defining malice and murder; second, in sustaining State's challenge for cause to three jurors who stated on their voir dire they had conscientious scruples in regard to inflicting the death penalty in a case of circumstantial evidence. The definition of murder in both degrees and malice express and implied are given in the stereotyped form, such as has been held by the decisions of this State to be proper. The criticism seems to center itself upon the following excerpt from the charge: "You are further instructed that implied malice is that malice which the law infers from or imputes to certain acts; that is to say, if the fact of an unlawful killing is established by evidence beyond a reasonable doubt, and there are no facts or circumstances in evidence which establish express malice, and none which tend to justify, mitigate or excuse the killing or which reduce the same to manslaughter, then the law implies malice, and such killing would in that event be murder in the second degree." The court nowhere defines manslaughter, adequate cause or sudden passion. It is urged that because the court did not define manslaughter, the definition of murder in the second degree is not sufficient, and we are referred to Thomas v. State, 7 Texas Ct. Rep., 818. That case is not in point. The court in this case did not instruct the jury that murder in the second degree was a killing on a sudden transport of passion without adequate cause, nor was it necessary that such a charge should have been given. There are no facts upon which to predicate passion of any sort, either with or without adequate cause The deceased was shot in his wagon in the back by appellant or Jordan Thompson, or both. There were no facts calling for a charge on passion with or without adequate cause, and we are led to believe the reason the court gave in charge murder in the second degree was by reason of the fact that it was a case of circumstantial evidence. There were no witnesses to the homicide except the perpetrators. The jury could not have possibly been misled or the defendant's legal rights in any way

jeopardized by omitting all allusion to manslaughter. As applicable to the facts of the case we believe the court's charge is correct; and it is only to the facts we can look in determining the legality or illegality of a charge.

In regard to the exception in the court's action permitting the county attorney to challenge three jurors who had conscientious scruples against inflicting the death penalty in cases of circumstantial evidence, we say that the ruling is correct. Bills of exception show that each juror when questioned on his voir dire stated he had no conscientious scruples about inflicting the death penalty. This was in reply to the general question. The county attorney then asked if they would inflict the death penalty in case of circumstantial evidence, or did they have conscientious scruples in regard to inflicting the death penalty in cases of circumstantial evidence. Each answered they had such scruples. Whereupon the court sustained the cause for challenge. This ruling was correct. Franklin v. State, 51 S. W. Rep., 951. The statute does not limit the cause of challenge upon this ground to cases of positive or direct evidence. It applies with equal force to cases of circumstantial evidence, and the State is as much entitled to have the jury free of conscientious scruples in regard to inflicting the death penalty in cases of circumstantial evidence as in cases of direct or positive evidence. There are also some bills of exception to overruling cause of challenge urged by appellant to certain of the jurors claimed by him subject to cause for challenge on account of having a conclusion established in their minds as to the guilt or innocence of defendant. These bills fail to show whether the jurors were peremptorily challenged or whether they sat upon the jury. Presumably they were peremptorily challenged and were not upon the jury, for the court certifies that he extended to appellant three additional peremptory challenges. The bills do not show any error. No objectionable juror is shown to have been on the jury.

It is also urged that the evidence is insufficient to support the conviction. As before stated, while the evidence is circumstantial, still it is of a very cogent character. Whoever committed the homicide is guilty of murder in the first degree, and the facts tend most cogently to show appellant did the killing. The defense sought to cast the killing upon Jordan Thompson. He was used as a witness upon the stand, and proved an alibi, which was corroborated by other witnesses. Appellant admits practically that the killing was done with his pistol. He states himself, as did the other witnesses, that he was riding in the wagon with deceased for some distance and shortly before the homicide. He testified that he got out of the wagon and that Jordan Thompson borrowed his pistol. Statements of appellant were introduced showing that while he was with Thompson that Thompson shot deceased from ambush from a cane patch. The killing was for the purpose of robbery and evidently well planned. We are of opinion that the evidence sustains the conviction, and the judgment is affirmed.

*Affirmed.*

ON REHEARING.

November 30, 1904.

DAVIDSON, PRESIDING JUDGE.—The judgment herein was affirmed at the Austin term, and is now before us on motion for rehearing. The grounds of this motion are practically the same as those urged in the motion for new trial in the trial court. The original opinion is not criticised in the motion. The motion urges and reiterates the motion for new trial. We have reviewed the questions again, and find it unnecessary to further write on any of them, except that which brings in review the court's charge in reference to accomplice testimony. A discussion of this question was omitted from the original opinion, because we did not think it had any merit; but appellant yet insists that charge was erroneous. This portion of the charge reads as follows: "If you believe from the evidence that C. L. Swackhammer was killed by being shot with a pistol or other weapon in the hands of some one, and the person committing the same committed the offense of murder, and if you further believe from the evidence that the witness Jordan Thompson knew or believed beforehand that such killing would take place, and willfully concealed such knowledge or belief, or that he aided in the commission of such homicide or in any manner advised or encouraged another to commit the same, or that he knowingly shared in the money taken from said Swackhammer on the occasion of his killing, if he was killed, and if any money was taken from him, then you will find that said Jordan Thompson was an accomplice to said homicide, and if you so find, then you are instructed that you can not convict defendant upon the testimony of said Jordan Thompson, unless you find that said testimony of said Jordan Thompson has been corroborated by other evidence, tending to connect defendant with the commission of said offense; and unless from all facts and circumstances in evidence, if any, and under the instructions given you in this case, you further believe beyond a reasonable doubt that defendant is guilty, and such corroboration of said testimony of said witness, if any, is not sufficient, if you believe it merely shows the commission of said offense, without connecting defendant with the commission of the same." The criticism of this charge by appellant is as follows: "Said charge not being the law, in that it makes the question of accomplice depend upon the question as to whether or not the killing constituted the offense of murder, whereas Jordan Thompson would have been an accomplice, if he had had any guilty connection with the unlawful killing of Swackhammer, whether it would constitute the offense of murder or not, and said charge is vague, uncertain and meaningless." The party who killed Swackhammer was guilty of murder. The court charged both degrees of murder, and as said in the original opinion, it was correct in view of the fact that the case was largely one of circumstantial evidence, that murder in second degree was given in charge; and we commend the court's action in charging upon murder in the second degree in this character of case.

There were no facts in evidence indicating a lesser degree of culpable homicide than murder; and in our judgment it indicates a homicide in the perpetration of robbery. The charge in regard to accomplice testimony is more liberal than is required by law. The jury were instructed that if the witness Thompson knew or believed that Swackhammer had been killed and concealed his knowledge or belief, either or both, this would constitute him an accomplice, and it would be necessary to corroborate his testimony. This was more than favorable to appellant. Under our decisions, the mere knowledge or belief that the offense was to be or had been committed, and the concealment of such fact or facts would not render the witness an accomplice. He must have some guilty connection with the crime. It is true, as contended by appellant, that a witness would be an accomplice, if he had any guilty participancy in the homicide or the crime under investigation. The only offense here tried, or degree of offense, was murder, and the law with reference to accomplice testimony was charged pertinently and favorably. In this there was no error, because this was the only offense being investigated. Manslaughter was not an issue in the case, nor was any inferior degree of homicide suggested by the facts or charged by the court. It is the duty of the court to charge the law applicable to the case made by the testimony, pertinently and accurately; and when this has been done the full measure of the law has been met. If manslaughter had been an issue in the case, and the court had limited the action of Thompson only to the offense of murder, then there might have been ground of complaint. But there was no other issue before the court except murder upon which a conviction could be predicated. If defendant was guilty at all, he was guilty of murder, and the facts suggested no other theory of homicide. There was no error in this portion of the court's charge. There was no exception to this charge on the ground it is on the weight of the evidence, therefore that question is not discussed, for under the terms of article 723, Code Crim. Proc., it is waived.

There is also a criticism that the verdict of the jury is indefinite. The conviction was for murder in the first degree under the first count in the indictment, which charged appellant with murder upon express malice. The second count charged murder in the perpetration of robbery. The latter count was not submitted to the jury. This was tantamount to an election by the State. Appellant's contention is this, if the homicide occurred at the hands of appellant, the facts show or tended to show that the killing occurred after the robbery; and that the jury might have been misled by the charge if appellant had no design to kill but only to.rob when he waylaid deceased and got in the wagon with him, and that he may have killed subsequently to the robbery only for the purpose of destroying evidence of deceased against him for the robbery case; that he then could not be guilty of murder upon express malice, and the jury may have taken the fact of the robbery against him as evidence of express malice. If, as a matter of fact, appellant robbed deceased by the use of the pistol and killed him to destroy his testimony

and the evidence of his crime of robbery, it would be a most cogent circumstance showing malice. It would be a deliberate killing for the purpose of covering up the crime of robbery. The plan concocted by the murderer of the deceased was well laid; premeditately entered into and deliberately executed. The facts will justify no other conclusion. The substance of the question raised by appellant in this connection was thoroughly adjudicated and discussed in Sharp v. State, 17 Texas Crim. App., 486, and decided adversely to his position; and that case has been uniformly followed. We deem it unnecessary to go into a further discussion of the question. Finding no reason to change our former views, the motion for rehearing is overruled.

*Motion for rehearing overruled.*