· KINNEY MILLER v. THE STATE.

No. 3775. Decided December 15, 1915.

Concurring Opinion February 7, 1916.

**1.—Rape—Indictment—Precedent.**

Where, upon trial of rape of a girl under the age of consent, the indictment followed approved precedent, there was no error in overruling the motion to quash.

**2.—Same—Sufficiency of the Evidence—Practice on Appeal.**

Where, upon trial of rape upon a female under the age of consent, the evidence, although conflicting, supported the conviction under a proper charge of the court, there was no reversible error.

**3.—Same—Bills of Exception—Qualifications by Court—Rule Stated.**

It is not only proper, but necessary in a great many instances, for the trial judge to explain and qualify bills of exception so that this court in reviewing the question can more readily comprehend the point, to pass thereon, and where no material injustice had been done the defendant, there was no reversible error.

**4.—Same—Continuance—Want of Diligence.**

Where the application for continuance showed an utter want of diligence to procure the attendance of the alleged absent witnesses, and the bill of exceptions so stated as the court qualified the same, there was no error in overruling the same. Following Stacey v. State, 177 S. W. Rep., 115.

**5.—Same—Bill of Exceptions—Evidence—Age of Prosecutrix—Marriage.**

· Where the bill of exceptions did not show what the witnesses would have testified, the same was fatally defective, but even if prosecutrix would have stated that she told defendant she was over age at the time of the alleged rape it would have been wholly immaterial, especially where the defendant got the lowest punishment. Following Martin v. State, 73 Texas Crim. Rep., 546, and other cases. And so would have been the fact that she was previously married. Following Smith v. State, 74 S. W. Rep., 557.

**6.—Same—Character of Prosecutrix—Specific Acts of Intercourse.**

Where, upon trial of rape upon a female under the age of consent, the trial court ruled that specific acts of intercourse with other men on the part of prosecutrix were not admissible in evidence, but subsequently thereto reversed his ruling and held that defendant could prove such specific acts of prosecutrix with other parties to show her general reputation as to chastity and veracity, and that the prosecutrix could be asked and required to answer such questions thereon, and no exception was taken thereto and no witness was offered to prove such acts, and no request made to retire the jury while this point was being

discussed by court and counsel, there was no reversible error. Harper, Judge, dissenting.

### 7.—Same—Evidence—Cross-examination—Immaterial Testimony.

Where, upon trial of rape upon a female under the age of consent, the prosecutrix on cross-examination by defendant testified that she had told defendant that she had married a certain party a year or so before the alleged offense was committed, and she had testified on her examination in chief that she did not so tell him until after the act of intercourse, and she had named the residence and names of witnesses who were present at such marriage, and witnesses of such name were subpoenaed by defendant and produced before her while she was being cross-examined, and she denied positively that either of them were the respective persons she had named, and said alleged witnesses denied that they were present at this marriage ceremony or had any knowledge on the subject, and the court thereupon instructed the jury not to consider this testimony because it was immaterial, there was no reversible error. Following Williams v. State, 24 Texas Crim. App., 637, and other cases. Harper, Judge, dissenting.

### 8.—Same—Evidence—Impeaching Own Witness—Grand Jury Testimony.

Where, upon trial of rape upon a female under the age of consent, the parents of prosecutrix were hostile to the State, and testified in favor of the defendant when the State placed them upon the witness stand, there was no error in permitting the district attorney to ask them leading questions, show them their own testimony before the grand jury, which was against the defendant and in behalf of the State, and therefrom ask them, respectively, if they did not so testify, some of which questions they denied and others of which they admitted, the court properly limiting such testimony. Following Mischer v. State, 69 Texas Crim. Rep., 223. Harper, Judge, dissenting.

### 9.—Same—Argument of Counsel—Other Acts of Sexual Intercourse.

Where, upon trial of rape upon a female under the age of consent, there was testimony introduced which by inference at least tended to show more than one act of sexual intercourse, and the district attorney in his argument alluded thereto, there was no reversible error, although the court had erroneously refused to permit the State to prove directly more than one act of sexual intercourse. Following Battels v. State, 63 Texas Crim. Rep., 147. Harper, Judge, dissenting.

### 10.—Same—Misconduct of Jury—Withdrawal of Testimony—Argument of Counsel.

Where the testimony of three of the jurors was amply sufficient to justify the trial judge to conclude that the jury did not go out of the record and discuss facts and matters not in the record; that they did not consider nor discuss any of the excluded evidence about the defendant committing other similar offenses; that they did not consider nor discuss what the district attorney said in his argument about other offenses and that it did not influence them, and that besides that if the jury mentioned and considered any of these outside matters it was after, and not before, they had all agreed on defendant's guilt, and, besides, defendant refused to examine the other jurors upon the question of misconduct of the jury, although invited to do so by the court, there was no reversible error. Following Lamb v. State, 169 S. W. Rep., 1158. Harper, Judge, dissenting.

### 11.—Same—Discretion of Trial Judge—Rule Stated—Harmless Error.

District judges are sworn officers of the law and have the opportunity on motion for new trial as well as on the trial itself to hear all the witnesses, observe their manner of testifying, and the conduct of direct and cross-examination of the witnesses by the attorneys, etc., and to observe the whole conduct of the trial, as well as to hear the jurors testify on the motion for new trial as to misconduct of the jury, and where, as in the instant case, the trial judge did not abuse his discretion, but corrected errors when he committed them in such

a way as to render them harmless, there was no reversible error. Following Martin v. State, 73 Texas Crim. Rep., 546. Harper, Judge, dissenting.

### 12.—Same—Failure to Examine Witnesses—Rule Stated—Presumption.

If a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable, and where the defendant alleged the misconduct of the jury in considering extraneous matters when deliberating upon their verdict, and only introduced three of the jurors whose testimony did not sustain his contention and declined to introduce the other jurors as witnesses, although they were in attendance, there was no reversible error in overruling his motion for new trial. Following Sweeney v. State, 65 Texas Crim. Rep., 593. Harper, Judge, dissenting.

### 13.—Same—Evidence—Other Offenses—Impeaching Witness.

Upon trial of rape upon a female under the age of consent, the State had the right to prove by defendant himself on cross-examination, in order to impeach him, that he had been arrested under a complaint charging him with the seduction of another female, and that in order to prevent a conviction therefor he had married the seduced girl so as to make her his wife and thereby prevent her from testifying against him; besides such testimony was admissible to show defendant's system of crime in these sexual offenses with young girls. Following Chance v. State, 63 Texas Crim. Rep., 603, and other cases, and while the details of defendant's connection with such similar offenses was inadmissible, yet no injury resulting therefrom, and the testimony being immediately withdrawn, there was no reversible error. Following Miller v. State, 31 Texas Crim. Rep., 609, and other cases. Harper, Judge, dissenting.

### 14.—Same—Rule Stated—Withdrawing Testimony Illegally Admitted.

While there is contrariety in the decisions of this court on the subject of the withdrawal of the testimony improperly admitted, yet the true rule is that if the admitted testimony is of such damaging character as to suggest the impossibility of withdrawing the impression produced upon the minds of the jury and thus curing the error, it will be cause for reversal; otherwise such testimony can be withdrawn and the error thereby cured, and where, as in the instant case, the admission of such testimony was not of that character the same could be withdrawn, and there was no reversible error. Following Hatcher v. State, 43 Texas Crim. Rep., 237, and other cases. Harper, Judge, dissenting.

### 15.—Same—Argument of Counsel—Rule Stated—Practice in District Court.

When an objectionable statement is made in the argument of State's counsel which is not authorized by the evidence or a deduction therefrom, mere objecting thereto will not present error as the defendant must also request a charge requiring the jury to disregard it, and where, as in the instant case, this was not done, there was no reversible error. Following Mooney v. State, 76 Texas Crim. Rep., 176 S. W. Rep., 52.

### 16.—Same—Case Stated—Argument of Counsel.

While this court emphatically condemns the argument of the district attorney in the instant case, still the record demonstrates that the jury did not consider it and it resulted in no injury to the defendant, and, therefore, it presents no reversible error. Harper, Judge, dissenting.

Appeal from the Criminal District Court of Travis. Tried below before the Hon. A. S. Fisher.

Appeal from a conviction of rape upon a female under the age of consent; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dickens & Dickens, Warren W. Moore, Hart & Patterson,* and *Houghton Brownlee,* for appellant.—On question of other offenses: Fore v. State, 5 Texas Crim. App., 251; Drake v. State, 15 S. W. Rep., 725; Welhausen v. State, 18 S. W. Rep., 300; Schwen v. State, 35 S. W. Rep., 172; Cogdell v. State, 43 Texas Crim. Rep., 178; Skeen v. State, 100 S. W. Rep., 770; Haney v. State, 57 Texas Crim. Rep., 158, 122 S. W. Rep., 34; State v. Conway, 145 S. W. Rep., 441; State v. Lovan, 151 S. W. Rep., 141; Sorrell v. State, 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299; Davis v. State, 172 S. W. Rep., 978; Woodward v. State, 97 S. W. Rep., 499.

On question of argument of counsel: McKinley v. State, 52 Texas Crim. Rep., 182, 106 S. W. Rep., 342.

*C. C. McDonald,* Assistant Attorney General, for the State.—As to question of prosecutrix's marriage: Smith v. State, 74 S. W. Rep., 556.

On question of argument of counsel: Richardson v. State, recently decided.

On question of withdrawing testimony: Harris v. State, 169 S. W. Rep., 657; Savage v. State, 170 S. W. Rep., 730; Branch's Crim. Law, sec. 321, and cases cited in opinion.

PRENDERGAST, Presiding Judge.—Appellant was convicted of the rape of a girl under fifteen years of age, and his punishment assessed at the lowest authorized by law.

The indictment is in strict accordance with the statute defining the offense (P. C., art. 1060) and follows the approved standard forms. The court committed no error in overruling appellant's motion to quash it.

The testimony established some of the material points without contradiction or contest. Some points were contested, and there was contradictory testimony on some of the material points, and there was some impeachment of some of the witnesses. However, with the positive and circumstantial evidence and the reasonable and legitimate deductions which the jury were authorized to draw and believe therefrom, the State's case was fully established by a considerable preponderance of the testimony. Strange to say, Zollie Jones' mother and father were decidedly hostile to the State and in appellant's favor and avoided testifying against him, and testified in his favor, in any and every way they could, and she herself at first was. It is manifest from the whole testimony that, after it was made known to the officers that appellant had probably committed the alleged offense, he sought to get possession of the girl, and did what he could to get her mother and father in possession of her, so that he could marry her,—not in good faith, but to successfully prevent her testifying, and his prosecution and conviction, and, doubtless, if he, or they, could have succeeded in getting possession of her, he would have pursued this course successfully. However, when the officers and the Humane Society of Austin were made aware of appellant's and her parents' intentions, they pro-

ceeded to send the girl to a convent in San Antonio and thereby prevented them from getting her and carrying out their plans. Her father or mother went so far as to sue out a writ of habeas corpus before the judge of the Criminal District Court of Travis County and have her brought back to Austin for a hearing. As soon as she was brought back the district judge, being made aware of the situation, placed her in the custody of a trustworthy woman in Austin and forbade access to her by appellant, her mother and father and appellant's attorneys, except in the presence and control of the judge. But the judge, upon the application of appellant's attorneys, in his presence, permitted access to her so that they could, and did, get all necessary or proper information about witnesses in appellant's behalf. It was also contended by the State, and there was testimony supporting its contention, that appellant also attempted, and in a manner was about to succeed, in spiriting away some of the material witnesses to avoid their testimony and secure an acquittal on his trial. Zollie testified that, at the time appellant had with her the interview at which her friend, Agnes Watson, was present, he then tried to get her to stop the case, and Agnes at his instance also tried to get her to do so. She said: "Mr. Miller said that, if I would stop it, he would pay us any amount of money and get us anything we wanted. . . . He said it did not matter how much." Appellant and Miss Watson denied this. She further testified that he gave Agnes money at that time and sent by her money to Zollie's mother, and also that he bought, or promised to buy, Agnes a dress costing $18. In trying to get Zollie to leave she said, appellant "said if I wanted to leave he would buy me a ticket anywhere I wanted to go." Appellant was arrested on complaint charging this offense in April, 1915, and released on bail. The grand jury convened in June following, and the indictment herein was filed June 10, 1915. His case was set for, and his trial began, on June 28th and was concluded and the verdict rendered June 30, 1915.

From all the testimony and legitimate and proper deductions therefrom, we will state substantially what the evidence clearly justified the jury to believe.

Appellant was an unmarried man, thirty-six years old. Continuously since 1900 he had been in the saloon business in Austin; several years previous to this offense, in business for himself. During all this time he had his room where he stayed and slept at night, eating at restaurants and around wherever it suited his convenience. He kept and himself attended two horses belonging to him some blocks from his saloon, going back and forth for this purpose three times a day. Zollie Jones, the alleged raped girl, lived with her parents in a house which appellant had to pass in going back and forth attending to his horses. In that way, some two months before he committed the alleged offense herein on April 1, 1915, he saw this girl and became acquainted with her parents. Her parents were very poor people and so was she. They had nothing and did not work, except at this time they were running a boarding house and taking some roomers. It was the theory of the

State, and borne out by the testimony, that appellant's lustful passion became aroused by seeing this girl from time to time and he set about to ensnare and ruin her. For that purpose he boarded with her parents for a month or two up to just before this offense was committed; and, although he kept his room as he had theretofore, he proceeded to sleep at her parents' house for about a week. During this time he was boarding and sleeping at this house, he ingratiated himself into favor with the girl and her parents, too. He began surreptitiously to get the girl to meet him in town away from her home and parents, and he took her buggy riding, both in daytime and at night, and when returning he would not take her to her home, but drop her out near there. The girl, Zollie, was then just a few months over fourteen years of age and several months under fifteen. She testified positively that on one of these buggy trips in daytime he took her in South Austin to a secluded place off from the road and not in sight from any residence, and accomplished her ruin, having complete sexual intercourse with her, on or about April 1, 1915. (She testified to two other acts by him, but this was excluded on his insistence.) The girl missed her menses and concluded she was pregnant by him and so informed him. At this time they met at night away from her home by appointment, it seems, to discuss the situation. The girl had had a confidential talk with a close girl friend of hers, and she had that girl friend to be present at this meeting. That girl friend, Agnes Watson, testified that in this interview appellant admitted and stated to her that he had had sexual intercourse with this girl, as claimed by her, and the girl testified that appellant in substance agreed to furnish the "stuff" to bring her menses on. Shortly before this illicit intercourse was had and up to that time appellant made her presents of money and of different articles of wearing apparel, among them a nice cloak, a nice dress and other articles. Appellant admitted giving her said gifts of clothing, but denied positively that he ever had sexual intercourse with her at any time or place. The girl, however, was strongly corroborated by other facts and circumstances fully proven. We think it unnecessary to here give any further detail of the evidence.

The record is quite voluminous. Appellant has twenty-six bills of exception, some of them very lengthy. The court in approving several of them qualified and explained them. Appellant bitterly complains of this action of the court, claiming that at no time when he took his bills of exceptions did the court then state that he would qualify them, or how he would qualify them, in approving them. We have carefully examined the record and the court's qualification of these several bills. The court's action in every instance is borne out and in accordance with the record. It is true that in some instances injustice may be done an appellant by the trial judge in qualifying his bills, but we think in this instance no material injustice has been done appellant. It is not only proper, but necessary, in a great many instances for the trial judge to explain and qualify bills so that this court in reviewing the question can more readily comprehend the point; and, in fact, it

not only aids this court, but in most, if not all, instances, it is necessary to make such corrections and explanations so that the true point raised can be seen and passed upon, and not an incorrect one from the record. Of course, he can not tell at the time of the exception whether he will qualify the bills. He can only know this when the bill is presented.

We have carefully read and studied each of appellant's bills of exceptions and the record in connection therewith. It will not be necessary to take up each bill separately, but we will in some instances group, but upon the whole include all of them raising any material question.

Appellant made a motion for a continuance on account of the absence of numerous witnesses. The qualification to appellant's bill on this point shows, and so does the record, that all of the witnesses appeared in court pending the trial and were placed under the rule with the other witnesses, except Curley White and Tom Knight. The qualification of the bill as to them states that "their testimony does not appear material, as it was upon the question of credibility of Zollie Jones. Further, that Knight lived only thirty-six miles from Austin, and White lived in Austin. The diligence was not sufficient." The record shows that the subpoena for these two witnesses was not issued until June 25th, just two days before the trial. The sworn return of the sheriff of Williamson County, to which the subpoena was issued for Knight, shows that Knight had left that county three or four months before. Clearly the court's action in overruling his motion for a continuance was correct. No diligence whatever was used to procure the attendance of these witnesses. Stacy v. State, 77 Texas Crim. Rep., 52, 177 S. W. Rep., 115.

He has a number of bills of exceptions to short portions of the testimony of Zollie Jones and some to the exclusion by the court of like short proposed testimony by her. His second bill is a sample of these, and we will give it substantially in full. After the style and number and court and the usual "Be it remembered," this bill shows that, while Zollie Jones was testifying in behalf of the State, on cross-examination, this occurred: "By Mr. Dickens: Q. 'I will ask you if you did not tell this defendant here, Mr. Kinney Miller, that you had married Will Clemens and that you were over age?' Judge Hamilton: 'We object to that.' The court: 'The objection is sustained.' Mr. Dickens: 'We except to the court's ruling. We want to show that one of the reasons he ever went with her was that she had explained to him that she had been married and was divorced from her husband.' The court: 'I understand.' Mr. Moore: 'It will be offered on another ground, as being a declaration of herself as to her age.' The court: 'The objection is sustained.' To which ruling of the court the defendant, by his counsel, then and there in open court excepted and took this bill of exception, which was allowed and ordered filed." The bill does not show what the witness would have testified, and on that ground alone it fails to show any error; but, even if she would have stated that she

told appellant she was over age, it would have been wholly immaterial. He got the lowest punishment. Martin v. State, 73 Texas Crim. Rep., 546; Robertson v. State, 51 Texas Crim. Rep., 493; Whitehead v. State, 61 Texas Crim. Rep., 558, and a great many other cases. The fact, if so, that Zollie had been previously married would be immaterial, for, if not appellant's wife, if she was under fifteen years of age, he would be guilty of rape, notwithstanding she had been married and was even then married, under the very provisions of the statute, P. C., art. 1063; Smith v. State, 74 S. W. Rep., 557.

Appellant has another lot of bills on the same subject matter. Some of them are quite lengthy. It is unnecessary to take up each separately. We will make such statement of them so as to show the question raised, applicability to the facts of the case, his objections and the court's ruling and action; Zollie Jones testified on his cross-examination of her that no man other than appellant had ever had any act of intercourse with her. Then he in substance asked her if she had not been out riding, and at night, with various other persons, naming them, and if she had not met another person, or persons, at night for the purpose of, and actually had, sexual intercourse with them, designating the places and persons, and that she had gotten from different men money at different times. The State not only objected to these questions and to her answering them, but also objected to all that character of testimony by these various men and parties to impeach her, claiming that such matter was wholly immaterial, and in substance she could not be impeached by such testimony. The court at first sustained the State's objections and would not permit the witness Zollie Jones to be so asked nor to answer, and also held that acts of intercourse with other men, or evidence tending to show that was inadmissible. However, during the further progress of the trial, he concluded that he was mistaken in his ruling and so held and announced to appellant and his attorneys, and in approving each of his said bills on that subject did so with this explanation and qualification: "The court at first held that the defendant could not show other specific acts of intercourse on the part of the prosecutrix (she being under age of consent) but subsequently reversed his ruling and held that the defendant could prove specific acts with other parties, and could introduce any testimony as to the general reputation of the prosecutrix as to her chastity or veracity. The defendant objected to any act of intercourse but one act with Miller. The court sustained the defendant and would not permit the State to prove but one act of intercourse with Miller." In addition, appellant has a bill (No. 25), in which it is shown that the court during the progress of the trial explained fully in effect that he had concluded that he was in error in refusing to permit Zollie Jones to be asked and answer such questions; and that she could be asked and required to answer such questions; and in addition he fully explained that he would admit specific acts of carnal knowledge by her with any and all other persons other than appellant and any testimony they would introduce tending to show that she had

had such acts with others, and all of the testimony on that subject that he had at first held was inadmissible. The bill shows what appellant claimed the court said and the colloquy between him and the appellant's attorneys fully. All of which occurred in the presence and hearing of the jury. The court in approving this bill, No. 25, qualified it as follows: "The defendant did not except to the ruling of the court as stated in the bill, no exception was taken after the court had reversed his ruling and stated that it would permit the defendant to show other acts of intercourse with Zollie Jones by other parties. The court stated that he would permit the defendant to show any act going to show that Zollie Jones had intercourse with other men and that the defendant could, if he desired to do so, introduce testimony as to the general reputation of Zollie Jones for being unchaste, or as to the general reputation for veracity. The defendant never after the court had thus ruled offered any witness to prove either of these facts. No request was made by either the defendant or the district attorney to retire the jury and no objections whatsoever was made to what occurred." Whether the court's ruling was at first right or wrong, and whether or not his last ruling was right or wrong, neither any nor all of his bills on that subject show any reversible error.

Appellant has another lot of bills, which show this substantially: On his cross-examination of Zollie Jones he asked, and had her to testify, that she had told him she married Will Clemens while living with her parents at Hairm, in Kaufman County, some year before the offense alleged in this case was committed. She swore that she did not tell him this at all until some time after the act of intercourse she had with him. And it further developed that a few days before the trial, when they had her before the judge seeking information as to the names of witnesses, she in effect told the residence of the Will Clemens she had married, and that a preacher by the name of McQuerter married them, and that she had a confidential and special friend there by the name of Miss Lillie McCray, who knew about the marriage, was present, etc. While Zollie Jones was testifying on cross-examination, there was produced before her from Kaufman County a witness by the name of Will Clemens; another, a preacher, by the name of McQuerter, and a Miss Lillie McCray, who had been subpoenaed by appellant. She was then asked if these were the three parties, the man she had married, the preacher who married her, and the confidential friend, etc. She swore positively that neither of them were these respective persons. Later appellant severally introduced these witnesses, and they respectively denied—Clemens that he had ever married the prosecutrix, McQuerter that he had ever performed the ceremony, and Miss McCray that she was a confidential friend or had any knowledge on the subject. All this was for the purpose of attempting to impeach Zollie Jones. All this occurred before the jury, the jury heard it all and saw these respective witnesses, etc., the court excluded their testimony and instructed the jury not to consider it, because immaterial. We think the

action of the court was correct: (1) Because it was an immaterial matter on which she could not be contradicted. Branch's Crim. Law, sec. 867, and authorities cited by him. (2) The positive testimony of Zollie Jones showed that neither of these three witnesses were the party she had married, the preacher who married her or the said confidential friend. Hence, there was nothing for the State to contradict by these several witnesses, because they swore to exactly the same thing in substance that Zollie Jones swore about it, and the court correctly withdrew the testimony from the jury and told them not to consider it. Williams v. State, 24 Texas Crim. App., 637; Lewis v. State, 15 Texas Crim. App., 647; Hyden v. State, 31 Texas Crim. Rep., 401; Roberts v. State, 70 Texas Crim. Rep., 297; Currie v. State, 72 Texas Crim. Rep., 463.

As stated, the father and mother of Zollie Jones were hostile to the State. The State, however, had used them as witnesses before the grand jury to indict appellant. Perhaps one or the other had also been used as a witness in the examining trial. Before the grand jury they gave material testimony against appellant in behalf of the State. Their testimony was taken down in writing and signed by them. When the State introduced them on this trial her father went so far as to fail or refuse to testify until the court punished him for contempt and sent him to jail. When each of them did testify they, in material points, testified in favor of appellant and contrary to what their testimony was before the grand jury.

When this occurred in the instance of each of them, the court permitted the district attorney to ask them some leading questions and to show them their sworn testimony before the grand jury and then therefrom ask them respectively if they did not testify so and so, quoting from their statement before the grand jury on material issues. They admitted some of them but denied others. The court committed no error in his ruling in this matter, as complained of in appellant's bills Nos. 20 and 21. It is well established in this State, both by the express provisions of the statute (C. C. P., art. 815) and the decisions noted thereunder and by Judge White also in his Ann. C. C. P., under the same article, that either party can attack the testimony of his own witness when his testimony is injurious to his cause, in any manner except by proving the bad character of the witness. It is also well established that the memory of the witness can be refreshed by having his attention called to, and being shown, his testimony on a previous occasion. Branch's Crim. Law, sec. 865; Mischer v. State, 69 Texas Crim. Rep., 223. And the testimony of such witness taken before the grand jury can be used for that purpose. On this point, the court gave appellant's charge as follows: "Gentlemen of the Jury: You are charged that any statements made by the witnesses Mrs. Jones or Mr. Jones before the grand jury can not be taken as testimony against the defendant, as you are only to be governed by the testimony as sworn before you on the trial of this case."

In another bill (No. 23) appellant objected to this only on account

of the district attorney's argument, viz: "Miss Watson meets this little girl over there in Wooldridge park, and she tells her something. What do you think—is there more than one act?" In approving this bill, the court did so with this qualification: "This remark of the district attorney was made in reply to the argument of defendant's counsel, who said that Miller himself testified that he had taken Zollie Jones out riding several times and that the State had only shown one act." In addition to this, the record shows that Zollie Jones in Wooldridge park did have a confidential conversation with Miss Watson, and that thereupon they both afterwards saw appellant, and Miss Watson testified that appellant admitted to her that he had had sexual intercourse with Zollie. Miss Watson also testified that she met Zollie in said park, and that Zollie confided to her and talked with her about an hour, and that afterwards she and Zollie met appellant and talked to him about his having sexual intercourse with Zollie, as shown above. In this character of case, that more acts than one can be proven is the settled doctrine of this court, decided in Battles v. State, 63 Texas Crim. Rep., 147, and a large number of cases since following it. At appellant's instance, the court erroneously refused to permit the State to prove more than one act. That would not prevent the district attorney from making the argument above stated based on the inference to be drawn from the evidence in the record. We think this argument by the district attorney was legitimate, and in no event shows any error.

The other questions herein are shown by appellant's thirty-ninth ground for his motion for a new trial and his bills Nos. 19, 22 and 24. The questions raised thereunder are so connected and interwoven we will state them together. They are very lengthy—too lengthy to copy. We will state them in full, and also the testimony of jurors on the hearing of the motion for a new trial.

In his motion for new trial he alleged that some of the jurors in considering the verdict went out of the record and discussed facts and matters not therein, claiming that he could not then give their names but would prove his allegation on the hearing of the motion. Alleging further that they considered the facts introduced about his raping other girls and in regard to Rosa Duffey, which the court had withdrawn from them and instructed them not to consider. And he asked that the jury be summoned to testify on the hearing of said motion so that he could prove by them said allegations.

The court had eleven of the jurors present on hearing said motion. One was absent. No point, however, was made because of the absence of that one juror. Eleven were enough. The appellant then introduced J. L. Nutt, the foreman, who testified substantially that soon after they went in the jury room to consider their verdict they voted on the question of his guilt, ten voting that he was guilty and two that he was not. That thereupon they discussed the case and the evidence, and without having any other vote they all agreed that he was guilty. The other two, who had at first voted not guilty, changed to guilty. That they then in discussing the penalty to be assessed differed, ranging

all the way from five years to life, in the penitentiary. That they discussed this question for some time, and finally all of them agreed to five years, which was the verdict. That after they all agreed upon his guilt and while they were discussing the punishment to be assessed, in going into another room for a drink of water he passed two or three or four of the jurors, who were standing together, and he heard them, or some of them, discussing or talking about appellant's reputation about raping other girls and in regard to Rosa Duffey. That he at once stated to them that they were not trying him for any of that, and they must not discuss it. That he did not know whether or not they further discussed it at all, nor does he state what, if anything, was the discussion of these two or three or four jurors. That, when he told them that they were not trying him for any of that and must not discuss it, there was nothing more said about it; that it was just spoken of one time only. That he did not know how long they had talked about it, nor could he tell what any of them said about it. He said: "I just happened to walk up, and they said that, and I told them we were not trying him for that," and that he afterwards heard nothing more on the subject. In another place he testified that they said nothing about any other girl except the Duffey girl. He said: "They just spoke of it that time, and there was no more said about it." When asked about the jury discussing what Mr. Hamilton, the district attorney, said in argument about a juror on the jury, as shown by his bill No. 22, he testified in substance that he thought there was probably a remark made about what Captain Hamilton said—that if it was so, he hit somebody mighty hard. He thinks even he himself made such remark. In one place he testified that that was not discussed at all by the jury, and was asked: "Was there anybody else that said it?" He answered: "No, sir; I don't remember." The bill and his testimony disclose that the appellant claims that the juror Harvill was the one who was discussing these various matters, and in his examination of the jurors he attempted to fix it on Harvill, but the juror Nutt could not, and did not, fix any of this on Harvill, or any other individual juror, or jurors. Later, on being questioned on this point, he said: "Well, two or three men said the same thing—that Captain Hamilton hit the man pretty hard if it was facts." In his cross-examination, he said in substance that in considering and finding the verdict, that he considered nothing else whatever except the law and the evidence that was before them, and that nothing else had any influence except the law from the court and the evidence from the witnesses and that they discussed nothing else except the law as given and charged by the court and the evidence that was before them, and that they all agreed on the guilt of appellant before anything was said or any discussion of any of these outside matters.

Appellant then introduced the juror L. W. Harvill, who swore that he thought not anything was mentioned in the jury room about Rosa Duffey. The effect of his testimony tended to show that nothing of these outside matters was mentioned or discussed by him or any other

of the jurors. And on cross-examination, that he decided the case on the law and the evidence, and allowed nothing else in the world to influence him.

Then appellant introduced Henry C. Miller, another juror, who testified in substance that he never heard in the jury room any discussion about the appellant raping any girl other than Zollie Jones, and that he heard no one discussing about any other girl.

The other eight jurors present were then tendered appellant for introduction and examination on the hearing of his motion for new trial. He affirmatively declined to introduce any of them. On his bill to the court's action in overruling his motion for a new trial, after hearing this testimony, the court qualified it by stating: "The court had subpoenas issued for the whole jury and told the defendant that he could examine the whole panel. Eleven of the jury appeared. The defendant only examined them."

Appellant's nineteenth bill of exception shows that the appellant testified, and when the State took him on cross-examination, over his objection, he was required to answer among other things that he knew Rosa Duffey; that, after identifying who she was, and in substance a young girl; and if he did not seduce her, and if he was not charged therewith and arrested therefor. The appellant's attorneys objected to going into this matter at all and proving orally by him the fact that he had been charged with the seduction of this girl, claiming that the records themselves would be the best evidence. One of the attorneys, at the time when this matter was up, expressly stated in substance that appellant had been charged with the offense of the seduction of Rosa Duffey. Upon inquiry by the court, he was assured at the time by the district attorney that he would produce the indictment or papers showing that he had been so indicted. Thereupon, the court permitted the cross-examination of appellant and permitted the State to go into the details of his alleged relations with the Duffey girl to the effect that, when he was charged and arrested for seducing her, he immediately married her, thereby making her his wife so as to prevent her testimony against him to convict him for that offense. That, at the time, she was pregnant by him, and later had a baby by him. That he abandoned her immediately after he married her and never lived with her at all as his wife. The court even permitted him to go into details about his baby, its sex, his perfect indifference to the baby, his having nothing to do with it; that he did not even know its name and cared nothing about it at all; in fact, to go into details that were not admissible in this case under any circumstances; and all this over appellant's persistent and repeated exceptions. When the cross-examination of the appellant was concluded, his attorneys called upon the district attorney to produce the indictment, which he had assured the court he would do. It then developed that no indictment was actually found, because of the fact, as stated, that, when he was arrested under the complaint charging him with the seduction of Rosa Duffey, he married her so as to destroy her testimony and prevent any indictment or conviction

of him for that offense. The district attorney then stated to the court that he had assured the court about the papers and his later production of them on what appellant's attorney, Mr. Moore, said on the question of the charge of seduction against him. The court being of the opinion, it seems, that the indictment was the best evidence, and it being shown that there was none, he thereupon immediately withdrew all of said testimony from the jury and at once instructed them orally, is will hereinafter be quoted, and in addition in his written charge also that it was all withdrawn and not to consider it, as will hereinafter be quoted. In approving appellant's bill of exception No. 19 on this subject, the court qualified it as follows: "The matter inquired about was upon cross-examination of the defendant. It was claimed by the State that the defendant after he had intercourse with Zollie Jones and after prosecution began he sought to marry her, not in good faith, but for the purpose of suppressing her testimony against him; and that Zollie's mother and father were aiding him in this matter. The State offered to prove that he had had intercourse with other girls under fifteen years of age and that when it was discovered, he married them to suppress their testimony. That he had a regular system for raping young girls and then married them so as to suppress their testimony. He also stated that he expected (to) show that the defendant had been indicted for this offense. The court admitted this testimony upon this statement. The State, however, could only show one other act of rape with another girl and failed to show indictments. The court excluded from the consideration of the jury all of such testimony and instructed the jury not to consider such testimony for any purpose."

By appellant's bill No. 24, he complains of this language of the district attorney in argument to the jury: "Little Zollie Jones has told you that the defendant did have intercourse with her and no witness has denied it but the defendant himself; how much attention are you going to pay to the defendant's testimony on this point when you know he is swearing to save himself from the penitentiary and possibly his life and when you consider that when he was on the stand he admitted that he married poor little Rosa Duffey and abandoned her immediately, although he had got her pregnant and that he did not know his baby's age and had forgotten its name; that he did not know where poor little Rosa Duffey was and didn't care." This was promptly objected to as soon as uttered by the district attorney, on the ground that he was out of the record and only seeking to prejudice the defendant before the jury. It seems the court immediately sustained appellant's objection, and in qualifying his bill on the subject did so as follows: "Upon cross-examination of the defendant he testified that he had been arrested for 'having intercourse with the Duffey girl and got a child by her and afterward married her and then abandoned her and did not know where she or the child was and did not know the name of the child.' This testimony was excluded by the court and in the court's written instruction the jury was instructed not to consider any testimony there excluded for any purpose. The defendant in his motion

for new trial set these remarks up as one ground for new trial claiming that these remarks wrongfully influenced the jury in finding a verdict and that this excluded testimony and the district attorney's argument then was discussed in the jury room and tending to cause the verdict of guilty. The court had subpoenas issued for all of the jury and eleven of them upon the hearing of the motion for new trial were brought into court and sworn as witnesses and tended (tendered) to the defendant. The defendant only examined three of them, and only one, the foreman of the jury, said that this subject was mentioned in the jury room and then only after the verdict of guilty had been agreed upon and that he immediately forbade a consideration of the matter and a discussion thereof and that there was no discussion. The other two jurors said it was not discussed or considered at all, and all three of the jurors said that it was not considered by any of the jury. The defendant declined to examine the other jurors. The court in considering the motion for new trial under the testimony as given, concluded that while the language of the district attorney was improper and as the defendant received the lowest penalty and as the facts fully sustained the verdict of the jury (they) were not improperly influenced by either the argument of the district (attorney) or the excluded testimony. The statement of facts taken on motion for new trial will show the testimony of these jurors."

In his bill No. 22, appellant complains of this language of this district attorney in argument before the jury: "I have been informed that there is a man on this jury who took the oath of office and stated that he did not know Kinney Miller and was not acquainted with Kinney Miller, that he knew nothing about this case, had never discussed this case . . . that that man, gentlemen, is on this jury, whom I have the honor to address, is a neighbor of Kinney Miller's, that he has discussed this case with him and that he has been in Kinney Miller's saloon. Now if he is on this jury for the purpose or with the object or hope that there will be a miscarriage of justice in this case, I want to inform you that so long as I am district attorney of this district and have charge of the prosecution of these cases"— Appellant, at the time, as soon as these words were uttered by the district attorney and before he concluded objected to any remarks on the subject, because none of it was within appellant's knowledge or that of his attorneys, and there was nothing in the record about the matter to show that such was true, and that the remarks could have been made by him but for one purpose, to terrify and intimidate the jury and prevent a full and fair discussion by them in the jury room, etc. The court, in approving appellant's bill on this subject, did so with the same qualification and statement as to exception 24, just above quoted.

The testimony of the three jurors, as a whole, was amply sufficient to justify the trial judge to believe and find, as he, in substance, shows he did, if it did not affirmatively establish: (1) That the jury did not go "out of the record and discuss facts and matters not in the

record," but, on the contrary, that they did not discuss nor consider anything except the law and the evidence before them. That they excluded everything else from their consideration. (2) That they did not consider nor discuss any of the excluded evidence "about this defendant raping other girls," nor "in regard to said Rosa Duffey." (3) That they did not consider nor discuss what the district attorney, Judge Hamilton, said in argument as alleged in appellant's bill No. 22. (4) That they did not consider nor discuss what Judge Hamilton said in argument about Rosa Duffey as alleged in his bill No. 24; and (5) if the jury mentioned, discussed or considered any of these outside matters, it was after, and not before, they had all agreed on his guilt.

It is true some of the testimony of juror Nutt, especially on direct examination, if considered alone, would tend to show that some of the jurors did mention, and he might have thought, possibly briefly discussed, some of said matters, but taking his testimony on cross-examination, and as a whole, we think it clearly authorized the trial judge to find and conclude, as he did, against all of appellant's contentions. But especially when he heard the testimony of the other two jurors, who positively and flatly swore, in substance, on this point the reverse of what Mr. Nutt did in his direct examination. In the recent case of Lamb v. State, 75 Texas Crim. Rep., 75, 169 S. W. Rep., 1158, we had occasion to discuss this question fully. We there held: "The trial judge heard all this and the testimony of each of the seven jurors, saw their manner of testifying, the questions that were put to them on direct and cross-examination, and the whole thing, and he was much more competent to arrive at the truth of the matter than this court can be from the statement of facts. He also doubtless knew each of these jurors personally and could determine the weight to be given to his testimony and his credibility. This court can not do that. There could be culled perhaps enough of the testimony of these jurors, if taken alone and believed by the judge, in favor of appellant, to have justified him in holding that the verdict was reached by lot. On the contrary, there is ample evidence and a preponderance of it, which clearly justified him to hold, as he did, that the verdict was not reached by lot. Upon the whole, it was a question of fact to be decided by the trial judge from all the testimony—not two or three of the jurors, but all seven of them."

Again, on all these questions we think what this court said in the recent case of Martin v. State, 73 Texas Crim. Rep., 546, is peculiarly applicable herein. In that case Martin, an old man, was convicted of raping, by her consent, a girl under fifteen years of age, she alone testifying to the act of intercourse, and several others, by him with her. He proved his good reputation as a peaceable, law-abiding citizen, and introduced testimony strongly tending to show he was impotent and it was impossible for him to have had sexual intercourse with her. He also proved many circumstances tending to show her testimony incredible. In the trial court, and this, he strenuously contended the evidence was not sufficient to sustain the verdict. But we correctly held that, as the trial judge heard the testimony, saw the witnesses,

and their manner of testifying, etc., and had refused to disturb the verdict, we could not, saying: "While quite a severe arraignment of district judges in general was made in the argument, yet they, like ourselves, are sworn officers of the law, and it is their, as well as our, duty to see that no unjust judgment is permitted against any citizen of this State. We have implicit faith and confidence in the trial judges, and that they will do their duty, and we always give great weight to their action in a matter of this kind, and feel that in doing so we are but following the plain intent of the law. They feel their responsibilities, as we do ours, and will protect the innocent as well as punish the guilty."

So, in this case, the trial judge heard all the witnesses, saw their manner of testifying, and the conduct of direct and cross-examination of them by their respective attorneys, and the manipulation, and attempted manipulation, of some of them by appellant, and the whole conduct of the trial from start to finish, and also saw and heard the jurors testify on the motion for new trial, and we have "faith and condence in the trial judge, that he did his duty, and we give great weight to his action, and feel in doing so, we are but following the plain intent of the law, and that he will protect the innocent as well as punish the guilty," and has done so in this instance. We do not mean to say that trial judges do not sometimes commit errors, for they all occasionally do so. We all do so. No judge of any court is infallible. This trial judge did commit some errors in this trial, but in time he duly corrected them in such a way as to render them harmless to appellant, as the evidence and record abundantly shows.

Further, appellant had eight other jurors present to testify. They were each bound to have also known the facts under investigation. They were at the time actually tendered to appellant for him to have them testify. He affirmatively declined to introduce any of them. Doubtless he had already experienced not only his utter failure to prove any of his contentions, but the testimony of the three whom he did have to testify established the reverse of his contentions so clearly he was satisfied the testimony of all the others would be to the same effect. At any rate, the trial judge could, and did, so conclude. The law on this point is well settled, as laid down in Graves v. U. S., 150 U. S., 118, 14 Sup. Ct., 40, 37 Law. Ed., 1021, as follows: "The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." All the authorities are to the same effect, and this court has many times so held. See Sweeney v. State, 65 Texas Crim. Rep., 593, 146 S. W. Rep., 883, where many of the authorities are cited. Also sec. 1052, subdiv. 8, White's Ann. C. C. P., p. 659.

Again, under all the authorities, there can be no doubt but that the State had the right to prove, as it did by appellant himself on cross-examination to impeach him, that he had been arrested under a com-

plaint charging him with the seduction of Rosa Duffey, a felony, and that in order to prevent conviction therefor, he had married the seduced girl so as to make her his wife and thereby prevented her testifying against him. Branch's Crim. Law, sec. 868. And it is our opinion also, that said testimony was admissible, under the facts and circumstances of this case, to show appellant's system of crime in these sexual offenses with young girls. Chance v. State, 63 Texas Crim. Rep., 602; Melton v. State, 63 Texas Crim. Rep., 362, and cases therein cited; Kaufman v. State, 70 Texas Crim. Rep., 441, and authorities therein cited.

There can be no question but that all the details of appellant's connection with Rosa Duffey. (or any other woman, other than Zollie), and that she had a baby by him, and his desertion and neglect of her, and his neglect of his baby and not knowing its name, and caring nothing about it, etc.—in fact, all the evidence to which appellant objected, shown by his bill No. 19, except what we have stated in the last paragraph above was clearly inadmissible. All authorities so hold. There are a great number of them. It is unnecessary to cite them. The admission of such testimony can not be too strongly and severely condemned. It is difficult to understand how the experienced and able district attorney could make such a mistake as to elicit such erroneous evidence, and the learned district judge could, even for a time, so forget the law as to permit its introduction. But this palpable error was committed by them. What was done to correct it? What injury, if any, was caused to appellant thereby so as to show he did not get a fair and impartial trial? If not corrected in time so as to prevent injury to him and because thereof he did not get a fair and impartial trial, unquestionably his case should be reversed. But, if corrected at once and no injury occurred to him, and he did get a fair and impartial trial, then why should the case be reversed? It should not be.

As soon as the judge came to himself and saw he had erroneously admitted said evidence, he immediately withdrew it all and at the time charged the jury: "Gentlemen, you will disregard and not consider for any purpose whatever any testimony in this case as to any other girl than the one about which the defendant is on trial. Don't consider for any purpose the testimony in regard to Rosa Duffey, or whatever her name is—you will not consider that for anything, or testimony as to any other girl in this case. That is excluded." And in addition, again, in his main charge told the jury: "You are further instructed that if any member or members of the jury have read any newspaper report of the matters under investigation in this case, or have learned any fact with reference thereto from any source other than from the evidence introduced in this case, then you are instructed that you must not mention, consider or discuss such newspaper or other reports, if any, for any purpose whatever, but you must confine your deliberations to the evidence introduced in the trial of this case and by the law as given you in the charge of the court; *and you must disregard and not consider in any manner any testimony which has been*

*excluded from your consideration by the court."* The trial judge not only withdrew the evidence, but twice specifically told the jury *not to consider it for any purpose.* When that was done, what is the law applicable to the question? It is, as clearly laid down in Miller v. State, 31 Texas Crim. Rep., 609, and many other cases as follows: "The effect of withdrawing and excluding testimony erroneously admitted, which was or may have been prejudicial in its nature and tendency, has been the subject of much discussion in the courts, and the decisions are not harmonious upon the question. The weight of authority, however, seems to be that such withdrawal cures the error, and such has been the opinion entertained by this court. Sutton v. State, 2 Texas Crim. App., 342; Marshall v. State, 5 Texas Crim. App., 273; Phillips v. State, 22 Texas Crim. App., 139; Nalley v. State, 28 Texas Crim. App., 387. See also State v. Towler, 13 R. I., 661; Thomp., Trials, secs. 715, 722, 723, and notes. In Sutton's case, supra, it was said: 'But conceding the court erred in admitting this testimony, the error, if in fact any was committed, was corrected by the court afterwards withdrawing it from the consideration of the jury.' This ruling has been approved in subsequent cases, and the doctrine uniformly upheld, that when improper evidence has been admitted over objection, it is the proper practice, and may become the duty of the court, to exclude or withdraw it from the jury, and instruct them to disregard it in finding their verdict. Authorities above cited; Willson's Crim. Stats., sec. 2514. *To hold otherwise would be to sanction the doctrine that the court could not cure any error into which it may have fallen by mistake or inadvertence, and thus render it helpless to rectify errors committed, and the trial a mockery and a farce. We can not sanction such a doctrine."* This Miller case (31 Texas Crim. Rep., 609) has never been criticised, modified or overruled, but many times cited and approved even down to a very late date. See Martoni v. State, 74 Texas Crim. Rep., 90, 167 S. W. Rep., 349; McDonald v. State, 77 Texas Crim. Rep., 612, 179 S. W. Rep., 881, and several cases there cited approving it. Vick v. State, 71 Texas Crim. Rep., 50; Love v. State, 68 Texas Crim. Rep., 233-234; Sweeney v. State, 65 Texas Crim. Rep., 593. It is useless to cite others. In Hatcher v. State, 43 Texas Crim. Rep., 237, this court again expressly held: "There is a contrariety of decisions of this court on the subject of the exclusion of testimony after it has once been improperly admitted. Some of the cases hold that the exclusion of such testimony will not cure the error, while others hold the contrary. In such a conflict the true rule would seem to be that if the admitted testimony is of such a damaging character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury, and thus curing the error, it will be cause for reversal; otherwise, if the testimony is not of that damaging character, and not likely to influence the jury, it can be withdrawn, and the error of its admission thereby cured." That case, too, has never been questioned, modified or overruled, but many times cited and approved. We regard this question as definitely settled in this

court. It is true that in said Miller and Hatcher cases this court recognized another well established rule, pointedly stated in the Hatcher case, just quoted, where "the true rule" is stated. This was also recognized in said Miller case, wherein it was even expressly stated, "we are not prepared to say that it (withdrawn inadmissible evidence) may not have prejudiced defendant in the minds of the jury." In that case, the death penalty was inflicted, but the case was affirmed. Now, was the admission of said illegal evidence cured by its withdrawal by the judge and his specifically charging them twice, as stated, that they *"must not consider it for any purpose"*? It could not have affected his credibility, because it was not on that subject. It might have been contended that it inflamed the minds of the jury and was calculated to cause them to inflict a severe penalty—and that is appellant's contention herein in connection with the reference to the matter in the district attorney's argument shown by bill No. 24, as we understand. But the very reverse of this is shown. On the hearing of the motion for new trial the jurors swore positively they did not consider nor discuss said excluded evidence, nor said statement about it by the district attorney. The trial judge so found and held. The jury assessed the lowest punishment. The preponderance of the evidence, without doubt, clearly established appellant's guilt. So that it is conclusively shown no injury whatever occurred to appellant in all this matter. It has uniformly been held, in accordance with the effect of our statute, since Judge Hurt in Davis v. State, 28 Texas Crim. App., 542, said, "to reverse in the absence of probable injury would be contrary to principle."

In principle, what is held by this court when the jury merely alludes to a former conviction of an appellant, and the punishment then inflicted upon him is applicable here. The statute forbids an allusion to such conviction, but this court has held repeatedly, as in Morrison v. State, 39 Texas Crim. Rep., 519: "The mere statement of that fact (a previous conviction and twenty-five years punishment) in the jury room may not have operated to the prejudice of appellant. Before a case would be reversed on this ground, some prejudice must be shown." We had occasion to review this question and the authorities at length in Coffman v. State, 73 Texas Crim. Rep., 295, where a great many of the cases are cited.

The like principle is also established where a mere allusion in the jury room to an appellant's failure to testify is made. Our statute expressly prohibits this, but our decisions establish that a mere allusion to appellant's failure to testify, unless injury is shown, is no ground for reversal. We also cited the cases on this point in the Coffman case, supra, p. 311.

Again, it is well established that, when the verdict is attacked for misconduct of the jury on any of these points; that, where the evidence heard on motion for new trial established the fact, as in this case, that the discussion of any of these outside matters occurred after the jury had agreed upon a verdict of guilty, but before they assessed the punishment, and when they did assess the punishment they fixed it at the

minimum authorized by law, no ground for reversal is presented. Parker v. State, 30 S. W. Rep., 553; Williams v. State, 33 Texas Crim. Rep., 128; Ray v. State, 35 Texas Crim. Rep., 359; Angley v. State, id., 435.

The only other question is whether what the district attorney said in argument about a juror, as shown by bill No. 22, presents reversible error. The testimony of the jurors shows they did not discuss nor consider what the district attorney said, and that it had no effect whatever on them. This of itself shows no injury occurred to appellant by reason thereof. The law on this point is likewise well established by the decisions of this court. We had occasion in the recent case of Mooney v. State, 76 Texas Crim. Rep., 539, 176 S. W. Rep., 52, to review this question, cite and quote from the cases and again call attention to the rules in such case. We think it unnecessary to do further here than to cite the Mooney case and each of the authorities cited and reviewed announcing the rules. Further, in that case, we held that this rule was also well established: "When an objectionable statement is made in argument not authorized by the evidence or a deduction therefrom, mere objecting thereto will not present error. In order to do so, the party must also request a charge requiring the jury to disregard it." See the authorities there cited on page 58. It seems the court sustained appellant's objection to this argument of the district attorney. The appellant at the time, nor at any time during the trial, requested any written charge of the court directing the jury not to consider this argument. The testimony of the jurors shows, as stated, that they did not consider it. Hence, under the authorities and the facts of this case, no reversible error is shown on this ground.

This court has all the time condemned improper argument of prosecuting attorneys, and we emphatically condemn this argument of the district attorney. It should not have been indulged; but, as the record demonstrates that the jury did not consider it and it resulted in no injury to appellant, it should not, and does not, show any such material error as would require or authorize this court to reverse this case on that account.

We have given this case and the record unusual, careful and thoughtful consideration and reached the conclusion that no reversible error is shown, and, therefore, the judgment will be affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I concur in affirmance but not in all the reasoning.

HARPER, JUDGE (dissenting).—I do not agree to the statement of the case as made. I do not think there is any testimony tending to show that the girl, Zollie Jones, was unfriendly to the State. I do not think the testimony authorizes a conclusion that appellant offered Miss Watson any money or present, or tried to get her to leave the State. It is true, Zollie Jones gave testimony so tending, but Miss Watson and appellant both emphatically deny such testimony, and there

is nothing in the record tending to show that she was specially friendly to appellant. She was a State's witness. There is nothing in the record to show that appellant tried to marry Zollie Jones to prevent her testifying further than the questions propounded by the State; in fact, the father, mother, appellant and Mr. Moore positively deny such fact, and there is no testimony to show such fact further than the testimony introduced to impeach Mr. Jones, outside of the questions propounded. I think there are several bills that present error, especially the ones complaining of the cross-examination of appellant, and the remarks of the district attorney on this testimony after it had been excluded. I had never read this record until Monday of this week, and do not wish to delay the opinion being handed down, but will write my views in full before the mandate is issued.

HARPER, JUDGE (dissenting).—At the time the opinion was handed down affirming the judgment in this case, I entered a dissent, noting at the time I could not agree to the statement of the case as made in several particulars. Since that notation was made several material changes have been made in the statement. However, I think there are several other incorrect conclusions and deductions still embraced in the opinion, but I would enter no dissent if it were not for the incorrect applications of the law to the case, even as stated. To refer to what I deem the inaccuracies in stating the record would serve no useful purpose. The record is on file and those who desire may peruse it.

Appellant was convicted of rape on a female under fifteen years of age. There is no question of force in the case, but if the intercourse occurred, it was by mutual assent. Zollie Jones, the prosecuting witness, testified that she had married Will Clements in Kaufman County some time before this alleged rape, but that the marriage had been annulled before her father moved to Travis County. That she lived with her father and mother, D. S. and Mattie Jones; that two grown brothers lived with them, and a younger brother; that her father kept a boarding house, and appellant, among others, boarded with them; that Mr. Davis, Mr. Knight, Mr. Wilson and Preston Williams also boarded with her father. No improper relations are shown to have occurred while appellant boarded at this house, nor for some three or four months after he quit boarding there, if any occurred. So the deduction in the original opinion as to his object and purpose in going there to board is not, in my opinion, supported by the record. Appellant quit boarding with Mr. Jones in January, and the girl testifies to the first act of intercourse as occurring in April following. Similar deductions from the testimony are stated instead of stating the evidence.

There are a number of bills in the record which, in my opinion, present error, but I do not care to notice but two or three of them—just merely entering my dissent to the other rulings sustained, especially to those bills which show that appellant offered testimony that would tend to show that the prosecuting witness, Zollie Jones, was nothing more nor less than a common prostitute. It is true, as stated, the

court reversed his ruling to the extent that he said he would allow the appellant to show other specific acts of intercourse, but at the time cautioned appellant's counsel, "before you put the witness on the stand be certain that the witness will not refuse to testify on the ground of incriminating himself." He narrowed appellant down to proving specific acts and general reputation, and would not let them prove such facts and circumstances as the following: "The defendant expected to prove and the witness would have sworn that the prosecutrix, Zollie Jones, was not an innocent girl as held out to be by the district attorney, but that she was a bad girl and had been out at night-time with various parties; with street car men and with different boys, and that she had been to an old vacant house near where the old colored woman by the name of Lula Moore lived and met different boys there at various times for vile and immoral purposes, and that the old colored woman had reproached her for it and told her she was going to tell her mother about her going there with boys; and that she had got up in the night and slipped away from her mother to meet boys and that she had stayed out all night with one Curly White," etc. With appellant being tried for rape by consent on this girl, no witness would voluntarily get on the stand and testify to an act of intercourse—it would be like voluntarily placing one's neck in a halter, yet in revising his ruling the court so limited the evidence. And while no witness would have voluntarily testified to an act of intercourse, yet the bills show that the defendant offered to prove by various witnesses facts and circumstances that no jury could or would have drawn any other conclusion than that she was guilty of various acts of intercourse with various and sundry people named,—that she was a prostitute—and this should have been admitted as affecting her credit as a witness. For it is almost alone upon her testimony that the jury must have found that appellant had had an act of intercourse with her. No other witness so testified, except the circumstance testified to by Miss Watson. Her testimony was simply that she had never met appellant until introduced to him by Zollie Jones, the prosecuting witness; that she was never with appellant but twice in her life, and on one of these occasions appellant had said: "With reference to whether Kinney Miller stated on that occasion that he had had or had not had carnal intercourse with Zollie, I will state I understood him to say that he had; I might have misunderstood him. Yes, sir; I was right there at him. As to what else he said, he said he was willing to help the girl, he didn't say in what way—he would get the 'stuff' or would give her the money to get it with." On cross-examination she said: "I understood Mr. Miller to state that he had intercourse with Zollie Jones; I might have misunderstood him." After this conversation with the girl she got in appellant's buggy and went riding with him and Zollie Jones.

Appellant testified on the trial, and most emphatically denied that he at any time or under any circumstances had intercourse with the girl, Zollie Jones. So the only proof of intercourse was by the girl, about whom the defendant offered to prove facts concerning that no

jury could have drawn any other inference than that she was a common prostitute (but was denied the privilege), and the evidence of the girl's friend, who stated she understood him to admit it, but she might be mistaken, but who after this admission, was willing to go riding with appellant and the prosecuting witness, Zollie Jones.

It is not altogether a question "of the lowest penalty," but the question of whether or not the jury would have found appellant guilty if only legitimate testimony had been introduced.

It is true, as stated in the opinion of the majority, the Humane Society, composed of most excellent ladies and gentlemen, took up this matter and this case, and doubtless feel a deep interest in it, but the question before us is not whether or not a goodly number of most excellent men and ladies desire this conviction to be affirmed, but the question is, has legitimate evidence been excluded and improper evidence and improper argument used to secure this conviction, and but for such improper evidence and improper argument, and the exclusion of legitimate testimony, the jury trying the case may not have been convinced of his guilt. I agree to the rule, that improper evidence admitted, but withdrawn, which would have no direct bearing on the guilt of the person on trial, nor of the character to be prejudicial, should not work a reversal, and that is what all the authorities cited in the original opinion hold; but was the testimony, which this court and the trial court admit was improperly admitted, of that character? I do not think so. It appears that when appellant was a witness, most vehemently denying that he at any time had had intercourse with this girl, the State, on cross-examination, over objection of appellant, proceeded to prove by him, if not guilty of this offense, he was at least guilty of having intercourse with one Rosa Duffey several years ago. Not being satisfied with proving that such a charge had been brought against appellant, the State proceeded to prove, and the court required him to answer that he did in fact have intercourse with Rosa Duffey; that a baby was born; that it was a boy, and appellant did not even know the name of his boy, and did not know where the boy nor Rosa had gone. The jury would feel, if there was any doubt about him having intercourse with Zollie Jones, the prosecuting witness in this case, they would do no wrong if they punished him a little for the Rosa Duffey affair. But to show to what extent the court allowed the district attorney to go in his cross-examination, I will copy herein the questions and answers as shown by the record before us, omitting the various and sundry objections made:

"Q. Mr. Miller, this is not the first time you had trouble with little girls, is it? A. The first time I have had trouble? A. Yes. A. Yes, sir; the first time. Q. I will ask you if it is not only the first, but the second or third time that you have been charged of getting little girls under the age of fifteen years and having intercourse with them? (No answer.) Q. Mr. Miller, do you know little Rosa Duffey? A. Yes, sir. Q. How long have you known her? A. Three or four years. Q. How old was she when you first met her? A. I don't

know how old she was. Q. And you didn't care how old she was either, did you? A. No, I wasn't particularly interested in her age. Q. Was she so young—where was she living when you first met her? A. She was staying down with Mrs. Smith on Sixth Street. Q. Did she have a mother? A. Yes, sir. Q. She wasn't staying with her mother? A. No, sir. Q. Do you know how old she was? A. No, sir; I don't know. Q. Don't you know that she was not but twelve years old when you met her? A. No, sir; I don't know how old. Q. Was she a girl of very much education or mentality? A. I don't think so. A. But a fairly good looking girl? A. Yes, fairly good looking. Q. I will ask you if you did not seduce that little child—girl—and have intercourse with her and she was under fifteen years of age? Q. I would like to change my question. I will ask you if it is not a fact, now don't answer this until he has time to object—that you did have intercourse with that girl—child—that she was between twelve and thirteen years of age—and not only once but many times, that you got her in a family way, and that there were legal proceedings started against you in that case for raping that girl, and after she had been in a family way you married her to keep from being prosecuted? A. No, sir; I did not. Q. You say you married her? A. Yes, sir. Q. And she was in a family way when you married her? A. Yes, sir. Q. How long after you married that girl was it before she had a baby? A. I can't tell you exactly how long. Q. You were not very much interested in your wife at that time—you do not remember how long it was before she had a baby? A. I can't tell you exactly. Q. Can't you tell about how long it was? A. No, sir. Q. You did not care how long it was, did you? Was it the next day, the next week, the next month? A. I can't see how it would do any good to care. Q. You don't know whether it was a girl or boy, do you? A. Yes, sir; it was a boy. Q. Do you know its name? A. No, sir; I don't know its name. Q. Don't even know its name? Well, where did you marry her? A. I married her at Mr. Johnson's, the justice of the peace. Q. Did you stay with her that night? A. No, sir. Q. You didn't stay with her? You went back to your room, did you? A. Yes, sir; I did. Q. After you were united in the holy bonds of wedlock with this girl do you know where she went that night? A. Back down to where she was stopping, back to Mrs. Smith's. Q. How long did you live with her? A. I didn't live with her at all, you might say. Q. You didn't live with her at all—do you remember your vow? A. Yes, sir. Q. Do you remember it or did you forget it—that you would not leave her? Do you remember it, that you would love her and care for her so long as you both did live, that you promised that in the eyes of God and man? That is the marriage ceremony you took with her, isn't it? A. Yes, sir. Q. Why didn't you live with her? A. Because I found out she was a bad girl. Q. Did you find out the very minute you married her? A. No, sir. Q. She bore your baby and you don't know its name, do you? A. No, sir. Q. And don't

care? A. No, sir. Q. Who was the next one you took up with,— or before I leave that, why did you marry Rosa? A. Because I wanted to. Q. Why did you leave her that very night? A. When I married that night, when coming back, she asked me did I care if she kept going with Mr. Cole. Q. You didn't want to soil yourself by living with a woman that had been having intercourse with you before she was married to you? A. I knew she was still going with this man. Q. You knew, too, that you had been having intercourse with her? A. Yes, sir. Q. Have you contributed anything to the support of that child? A. Yes, sir. Q. But you don't even know its name? A. No, I don't know its name. Q. Who was the next child that you had intercourse with? A. The next child? Q. The next girl you ruined? A. I never ruined any girl. Q. You never ruined any girl? You have been very careful about your reputation, haven't you, to keep from going with anyone who bears your name and your child? Now, what were you going out with Zollie for? A. I liked her and liked to be in her company."

If there is any rule of law rendering this testimony admissible, the writer has failed to find it. The opinion affirming the case admits it was error, but says the trial court excluded it after he had permitted the jury to hear it; that the trial court said in approving the bill, that he thought the State would prove a system of raping girls, and when he found the State could not prove such a system he excluded it. If such testimony would be admissible to prove system, it is a new rule of law that I have been unable to find heretofore expressed in any of the opinions of this court or any text-writer. System is as to the mode or manner of committing crime, to show that the present crime was committed in the same way. There is no attempt to show a mode and manner of committing crime in the above testimony, but only to make the witness admit he had sexual intercourse with Rosa Duffey; that she gave birth to a boy, and appellant did not know the name of the boy. Could the harmful and hurtful effects of such testimony be withdrawn? Could the prejudice necessarily created by it be taken from the minds and hearts of the jurymen? I do not think so. As well pour a bottle of ink in a bucket of clear water and then seek to withdraw it. It could not be done. There is but one way to get pure water again, and that is, empty out the polluted water and get a fresh bucket of water. There is but one way to give this man a fair trial in accordance with the rules of law—get a new jury whose mind has not been poisoned by this improper testimony.

Mr. Wharton, in his work on Criminal Evidence, section 1719, says: "Notwithstanding the withdrawal of the evidence, its effect still remains, and the jurors being untrained in matters of discriminating between relevant and irrelevant evidence, the error is not cured."

This court has held that error in admitting evidence, where it is of a material character calculated to influence the jury, is not cured by its subsequent withdrawal from the jury's consideration. In Clem-

ents v. State, 61 Texas Crim. Rep., 164, this court, speaking through Judge Davidson, said:

"The court in the charge to the jury withdrew from their consideration this evidence. It was said in Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122, 'The State has used this testimony both before the jury and in the argument of the case as the most damaging testimony against appellant attacking his theory of self-defense.' It was further said in the Darnell case, 'We are of opinion that the withdrawal of it from the jury, under the circumstances, did not cure the error.' Quite a number of cases are cited in the Darnell case in support of the ruling. In McCandless v. State, 42 Texas Crim. Rep., 58, it was held that the admission of evidence of a material character calculated to influence the jury is not cured by subsequent withdrawal from their consideration. And in Henard v. State, 46 Texas Crim. Rep., 90, this language was used: 'But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this State in a number of cases. See Railway v. Levy, 59 Texas, 542; Miller v. State, 31 Texas Crim. Rep., 609. We think the true rule on this subject to be: If the testimony is not of a very material character, it may be withdrawn by the court, and the error cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their consideration would not heal the vice of its admission.' It was said in Railway v. Levy, supra, 'It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors against the opposite party, is erroneously permitted to go before the jury, it is ground for reversal.' These extracts are from the Darnell case, 58 Texas Crim. Rep., 585, supra. If this is the rule in civil cases, by a much stronger course of reasoning it ought to be the rule in criminal cases."

In Kemper v. State, 63 Texas Crim. Rep., 1, this court, speaking through Judge Scott, said:

"And we here now lay down the rule to be that, where testimony has been admitted before the jury which is calculated to injure or prejudice the rights of the defendant, or which is calculated to seriously affect the credibility of the witness for the defendant, or to affect the weight of his testimony, that the court can not thereafter withdraw said testimony from the consideration of the jury, and thereby cure the harm or the error committed by the introduction thereof. The prosecuting officers of the State must understand, and the trial judges who make these rulings must understand, that this court will not hold such errors to be harmless, because we believe them to be harmful, and we recognize as correct the principle which was announced by one of the prosecuting officers in this case, according to the record, when, in

referring to the withdrawing of testimony that had been erroneously admitted, he said: 'On the principle that that which is once in can not be withdrawn.'"

In Barth v. State, 46 S. W. Rep., 228, this court, speaking through Judge Henderson, said:

"But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this State in a number of cases. See Railway Co. v. Levy, 59 Texas, 552; Miller v. State, 31 Texas Crim. Rep., 609, 21 S. W. Rep., 925. We think the true rule on this subject to be: If the testimony is not of a very material character it may be withdrawn by the court, and the error thus cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their consideration would not heal the vice of its admission. As was said in Railway Co. v. Levy, supra: 'It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors in favor of the party who offers it, and to arouse the feelings of the jurors against the opposite party, is erroneously permitted to go before the jury, it is ground for reversal.' If this is a good rule in civil cases, by a stronger reason it ought to be the rule in criminal cases."

I could continue the citation of authorities from the decisions of this court, but do not deem it necessary, for in my opinion it is made manifest that this testimony was not in fact withdrawn from the consideration of the jury.

In his closing address the district attorney in his argument to the jury said:

"Little Zollie Jones has told you that the defendant did have intercourse with her and no witness has denied it but the defendant himself; how much attention are you going to pay to the defendant's testimony on this point when you know he is swearing to save himself from the penitentiary and possibly his life and when you consider that when he was on the stand he admitted that he married poor little Rosa Duffey and abandoned her immediately, although he had got her pregnant and that he did not know his baby's age and had forgotten its name, that he did not know where poor little Rosa Duffey was and didn't care?"

This argument was promptly objected to, and the court *overruled the objection,* and stated to the district attorney he would be given *additional time,* because he had been interrupted by the objection made. In approving the bill the court does not deny he permitted this argument, but says when the motion for new trial was presented he had all the jurymen summoned and tendered them to counsel for appellant, that he might examine them and see if this improper testimony and

improper argument had any effect on the jury, and because counsel for defendant declined to put all the jurymen on the stand, the court concludes that the improper testimony and improper argument was not considered by the jury. Counsel for defendant did place three of the jurymen on the stand, and two of them say the improper argument and testimony was not discussed and did not influence them, but Mr. McNutt, the foreman of the jury, says he heard "three or four of the jurymen discussing this improper testimony and argument, and he told them they must not do so. That all the jury was there talking and some of them spoke up and said they thought his reputation was enough." Appellant had not put his reputation in issue, and there was no testimony introduced as to his reputation, except the Rosa Duffey affair.

It is the first time in the history of this court, so far as I have been able to ascertain, when it has been held that when the defendant had shown that improper testimony had been admitted, that improper argument of a grievous nature made, it then became the duty of appellant to show by examination of the jurors that such improper evidence and improper argument was in fact the reason why they convicted the person on trial. This is going further than this writer is willing to go, even though he knows, and has been made to know, that a great many good men and women desire this conviction to stand. I would not be understood as intimating that such influences could or have influenced my brethren in rendering the opinion they have rendered. I know them too well to think that they would let such matters influence them, or cause them to do other than as they deemed right, and their duty under the law. But viewing these matters as I do, I would be recreant to my duty and unworthy of the position I hold, if I did not enter this my dissent to such a rule of law.

If the court excluded the testimony, certainly he should have sustained appellant's objection to the argument, for it would be then about matters not in evidence, and this court has always held this improper. In the case of McKinley v. State, 52 Texas Crim. Rep., 182, this court, speaking through Judge Davidson, said:

"Permitting attorneys for the prosecution to dwell in argument on the character of a defendant when not in issue, in a way calculated to prejudice him before the jury, is error. See Turner v. State, 39 Texas Crim. Rep., 322; Pollard v. State, 33 Texas Crim. Rep., 197. Nor is vituperative and abusive argument permissible, and a conviction obtained in this manner is unlawful, and where the record on appeal shows such was permitted to prejudice the accused before the jury, the appellate court should not hesitate to set it aside. See Crawford v. State, 15 Texas Crim. App., 501, and Parks v. State, 35 Texas Crim. Rep., 378. And it is error for counsel in argument to state facts not in evidence. See Tillery v. State, 24 Texas Crim. App., 251; Orman v. State, 24 Texas Crim. App., 495; Clark v. State, 23 Texas Crim. App., 260; Robbins v. State, 47 Texas Crim. Rep., 312, 11 Texas Ct. Rep., 560; Bell v. State, 56 S. W. Rep., 913; Harris v. State, 17 Texas Ct. Rep., 815; Harris v. State, 50 Texas Crim. Rep., 411, 17 Texas

Ct. Rep., 270; Powell v. State, 70 S. W. Rep., 218, 9 Texas Ct. Rep., 813, and White's Code of Crim. Proc., pp. 498, 500 and 501, for collation of authorities. In our opinion the statements in the argument of the closing speech for the State were of such character that the conviction ought not to be permitted to stand. Usually the instruction of the court to the jury to disregard unwarranted remarks by counsel will be regarded sufficient to prevent a reversal, but where they are of a very damaging. character and in cases that inflame or have a tendency to inflame the public mind, a different rule obtains. Not only was the character assailed, but statements of fact made which, if in existence, were not permitted to go before the jury. We wish to emphasize our condemnation of the practice of permitting matters of this sort to occur and then seeking to withdraw them from the jury by charges, and we want to emphasize again that it is wholly unnecessary to jeopardize convictions by this line of conduct. The Constitution and the laws of the State guarantee a man a trial and a fair trial on the facts and the law of his case, and it is not legal that matters and facts of this character can be introduced in the argument to the jury or by counsel in the argument, even when if offered through witnesses they would have been admissible; the damage, therefore, would be the greater where the facts were not admissible at all. It is a dangerous practice even for the court to admit testimony that is illegal and then undertake to withdraw it in his charge, and this court has had occasion to reverse judgments on account of this practice."

A long list of authorities so holding will be found in Standard Ency. of Proc., pages 819 and 820, from this State and nearly every State in the Union.

In Branch's Crim. Law, section 61, the authorities from this State are collated, and it is held error for State's counsel to get before the jury in argument a fact which he would not be entitled to prove the effect of which is damaging to the defendant, citing Jenkins v. State, 49 Texas Crim. Rep., 457; Rodriquez v. State, 58 Texas Crim. Rep., 275, 125 S. W. Rep., 404; Askew v. State, 54 Texas Crim. Rep., 414; Baughman v. State, 49 Texas Crim. Rep., 33; Coleman v. State, 49 Texas Crim. Rep., 82; Cline v. State, 71 S. W. Rep., 23; Turner v. State, 39 Texas Crim. Rep., 329, 45 S. W. Rep., 1020; Battles v. State, 53 Texas Crim. Rep., 202, 109 S. W. Rep., 195; Fuller v. State, 30 Texas Crim. App., 559, 17 S. W. Rep., 1108; Bice v. State, 37 Texas Crim. Rep., 43,. 38 S. W. Rep., 803; Pollard v. State, 33 Texas Crim. Rep., 203, 26 S. W. Rep., 70, and many. other cases cited in the above quoted section.

Under no phase of this case was the testimony that appellant was guilty of raping Rosa Duffey admissible. The fact that two or more crimes may have been committed in the same way does not show system. (Long v. State, 39 Texas Crim. Rep., 537; Barkman v. State, 52 S. W. Rep., 69; Smith v. State, 52 Texas Crim. Rep., 80.)

Defendant should be tried on merits of each case, and proof of extraneous crimes which does not go to show intent, identity, or system,

or which is not part of the res gestae, is not admissible if it could only show that defendant was a criminal generally. Gilbraith v. State, 41 Texas, 567; Buck v. State, 83 S. W. Rep., 390; Lee v. State, 73 S. W. Rep., 407; McIver v. State, 60 S. W. Rep., 51; Buck v. State, 38 S. W. Rep., 772; Kelley v. State, 18 Texas Crim. App., 262; Bryan v. State, 49 Texas Crim. Rep., 200; Nixon v. State, 31 Texas Crim. Rep., 205; Williams v. State, 24 Texas Crim. App., 412; Ivey v. State, 43 Texas, 425; Grant v. State, 42 Texas Crim. Rep., 273, 58 S. W. Rep., 1026; Wilson v. State, 41 Texas Crim. Rep., 115, 51 S. W. Rep., 916; Williamson v. State, 13 Texas Crim. App., 514; Conley v. State, 21 Texas Crim. App., 495; James v. State, 40 Texas Crim. Rep., 190; Unsell v. State, 39 Texas Crim. Rep., 330; Owens v. State, 39 Texas Crim. Rep., 391; Welhousen v. State, 30 Texas Crim. App., 623; Owen v. State, 58 Texas Crim. Rep., 261, 125 S. W. Rep., 405; Johnson v. State, 42 Texas Crim. Rep., 440, 60 S. W. Rep., 667; Jordan v. State, 96 S. W. Rep., 35; Lightfoot v. State, 106 S. W. Rep., 345; Hill v. State, 44 Texas Crim. Rep., 603, 73 S. W. Rep., 9; Marshall v. State, 22 S. W. Rep., 878; Schwen v. State, 37 Texas Crim. Rep., 370, 35 S. W. Rep., 172; Neumann v. State, 58 Texas Crim. Rep., 248, 125 S. W. Rep., 28; Holland v. State, 55 Texas Crim. Rep., 27, 115 S. W. Rep., 48; Pace v. State, 58 Texas Crim. Rep., 90, 124 S. W. Rep., 949; Chumley v. State, 20 Texas Crim. App., 547; Woodard v. State, 51 S. W. Rep., 1122; Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; Latham v. State, 39 Texas Crim. Rep., 472; Dimry v. State, 41 Texas Crim. Rep., 272; Haney v. State, 57 Texas Crim. Rep., 158, 122 S. W. Rep., 34; Pridemore v. State, 59 Texas Crim. Rep., 563, 129 S. W. Rep., 1112; Crass v. State, 30 Texas Crim. App., 480; Cesure v. State, 1 Texas Crim. App., 19.

Proof of other offenses is not admissible to show system, intent or identity, unless some of these matters are in issue. Denton v. State, 42 Texas Crim. Rep., 427, 60 S. W. Rep., 670; Parker v. State, 75 S. W. Rep., 30; Glenn v. State, 76 S. W. Rep., 759; Bink v. State, 89 S. W. Rep., 1076; Davenport v. State, 49 Texas Crim. Rep., 11, 89 S. W. Rep., 1077; Johnson v. State, 50 Texas Crim. Rep., 116, 99 S. W. Rep., 556; Herndon v. State, 50 Texas Crim. Rep., 552, 99 S. W. Rep., 558; White v. State, 11 Texas Crim. App., 476. System, identity, intent, etc., were not made an issue on this trial, and could not be an issue under the evidence.

Not only has it always been held in this character of case that proof that the person on trial had committed other crimes was inadmissible, yet in those cases, where the other offense was res gestae of the transaction, or was admissible to show intent or system, it has always been held that State's counsel should not be permitted to go into details of the offense, and inquire whether or not the person on trial was or was not guilty of such offense. Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138; Ware v. State, 36 Texas Crim. Rep., 597, and other cases.

In my opinion there are other errors in the record, but if the above

are not of a grave enough nature to cause a reversal of the case, it would be useless to discuss the others, and this opinion is already of too great length. Not only was testimony admitted that appellant was guilty of the crime of rape on Rosa Duffey three years and more prior to this alleged offense on Zollie Jones, but the details were gone into and the abhorrence of the district attorney made manifest that appellant did not even know the name of the boy. It can not be said the testimony was excluded, for the district attorney was permitted to argue the whole details of these other crimes to the jury over the objection of appellant, and this argument was in no way limited in the court's charge. If such can be said to be harmless error, then there are no harmful and hurtful errors.

Appellant may be guilty of this crime. The record discloses a great many good men and women may believe so, but what we are passing on is whether or not appellant has been accorded a trial in accordance with the law of the land. It is far more important that the law be maintained in its purity than that any one man be confined in the penitentiary walls, or go free of merited punishment.

May the time never come when the law may be bent, or the judgment of the courts swayed, by their abhorrence of the crime, or detestation of the criminal.

DAVIDSON, Judge (concurring).—Concurring in the affirmance of this judgment, I do not care to go into a detailed statement of the case, the law or the facts. In a general way the record as well as the opinion and Judge Harper's dissent show when the appellant offered to prove acts of intercourse by prosecutrix with other men, objection was made by the State, and sustained. The court, upon reconsideration, informed the defendant and his counsel they could prove all such acts of intercourse and any other fact which tended to show the prosecutrix was not chaste; and, further, could show, if they so desired, her reputation along the same line. The bill of exceptions then shows, as qualified by the trial judge, that appellant did not offer any such testimony, but either declined or failed to do so. Of course, in this condition of the record, as to this matter, appellant is in no position to claim error. If he had such testimony and desired to use any or all of it, the court informed him that he could introduce it and get the benefit of it. Not having done so, he can not be heard to complain.

The State was permitted to introduce evidence of other acts of intercourse between appellant and prosecutrix. This was subsequently withdrawn by the court, appellant having objected. This character of testimony, under the decisions of this court, is admissible. I do not purpose to review those cases. The matter underwent thorough investigation and careful decision in Battles v. State, 63 Texas Crim. Rep., 147; Smith v. State, 64 Texas Crim. Rep., 454; Cain v. State, 68 Texas Crim. Rep., 507; Walls v. State, 69 Texas Crim. Rep., 318. Other cases might be cited, coming down to and including Williamson v. State, 72 Texas Crim. Rep., 618. The Battles case was written by

Judge Harper, as was Smith v. State, 64 Texas Crim. Rep., 454. The Battles and Smith cases both show that I dissented from the conclusion announced by the majority. If there was any error in the instant case, it was committed by the court in withdrawing that testimony, but of this, however, the defendant can not complain. If the State was entitled to prove other acts of intercourse between appellant and prosecutrix, certainly the defendant could not be injured by withdrawing such testimony on his objection. The State was entitled to this testimony; it was legitimate under those decisions. I do not care to follow that matter.

The State offered, and was permitted to introduce, evidence of the fact that appellant had been arrested under a complaint charging him with rape of Rosa Duffey, she being under fifteen years of age. This matter was gone into at some length over the objection of appellant. It seems that during the investigation of this phase of the case it was admitted by appellant's counsel that he had been arrested for that offense, but it later developed, however, that appellant had not been indicted by the grand jury. That case seems to have arisen or was based on a complaint; at least, the evidence is clear he had been arrested charged with that offense, but that he had not been indicted. This is accounted for by reason of the fact that after being arrested and before indictment, he married the girl. She then became his wife. The State was then also permitted to develop other matters in connection with it, among which was, that the girl, Rosa Duffey, had given birth to a child, and that appellant was the father of it. Appellant stated that he had never seen the child; but had married the girl and quit her that same night, she going her way and he going his, he having nothing further to do with her. This is the substance of the details, though it covered a lengthy examination. Under all the authorities, it was proper and legitimate for the State to prove that appellant had been arrested for another felony as impeachment, he having taken the stand as a witness in his own behalf. This matter has undergone investigation in a great many cases in the history of Texas jurisprudence. See Jackson v. State, 33 Texas Crim. Rep., 281; Oliver v. State, 33 Texas Crim. Rep., 541. These cases have been followed without intermission, so far as I am informed, in the history of our jurisprudence. So the court was not in error in admitting testimony as to the arrest for the previous extraneous felony. Appellant could thus be impeached. It was not necessary to produce the records, as the question was but one of impeachment. The details, however, were not admissible, and should not have gone to the jury, and, in my judgment, would have been reversible but for the fact that upon objection by appellant's counsel all of the testimony above mentioned in this opinion was withdrawn from the jury, and they instructed not to consider it for any purpose. These rulings of the court were made grounds of the motion for new trial, on the theory that appellant was injured, and the injury was not cured by the withdrawal of the testimony, and also that the jury discussed it. At appellant's request the trial judge

issued process and secured the presence of eleven of the twelve jury-men to testify for defendant on this issue. Appellant used three of them, and failed to prove his allegations but proved by them to the contrary, and that in fact they paid no attention to it, and what was said or occurred among them was after they had found their verdict. Whether jurors can impeach or sustain their verdict or not, the de-fendant can not complain of the action of the trial court. These jurors were brought into court and testified at his request. He sought to attack their verdict but failed. It was not a refusal of the court to hear evidence on the question. He heard it. I am of the opinion under these circumstances, unless we overrule later decisions of this court, that this was not error such as would require a reversal of the judgment. My positions on these various matters are well known, but they have not obtained as dissenting opinions will show. Judge Prendergast has cited many cases in regard to the effect of the with-drawing of testimony.

The district attorney made a speech in which he referred to the fact that the defendant deserted Rosa Duffey after he had ruined her and had never seen his child. The court signs this bill with the qualifica-ticn that all these matters were withdrawn from the jury not only verbally but in his general charge, and in giving requested instructions asked by appellant. This, in my judgment, is the only serious ques-tion. But for the later authorities I would have joined in a reversal of the case, but the matter has been fought out and the writer has often dissented. I might cite the later case of Little v. State, 77 Texas Crim. Rep., 339, 178 S. W. Rep., 326, as well as many others. The language used by counsel for the State in that case is more pungent and detri-mental than the language imputed to the district attorney in this case. I do not care to burden what I have to say with repetition of questions in that case. It is shown in the majority opinion, in that case, and also each bill is set forth separately in the dissenting opinion and the authorities collated. I seriously doubt if we could find a case in which counsel went farther out of the record in testifying in his speech before the jury to matters that were of serious import, and which were not in evidence before the jury than shown by the Little case. That the matters stated in the Little case were damagingly adverse to appellant is not to be questioned. The opinion affirming that case is based upon the fact that appellant did not request special instructions withdrawing these remarks and testimony from the jury. In the instant case ap-pellant's counsel did not request that the remarks be withdrawn, and no special instructions were asked about it one way or the other. The court in the general instructions charged the jury not to consider anything in connection with that character of testimony, and withdrew it entirely from their consideration, and also gave a special charge to the same effect, written and requested by appellant's counsel. There are many cases, in fact, a great number of them, which hold that improper argument by prosecuting officers not inherently prejudicial can not be reviewed on appeal unless defendant requested a special

instruction that the argument be disregarded. For collation of a great number of such cases see Vernon's Criminal Statutes, on bottom of page 416, note 38, and generally see the same work, on pages 411 to 417, inclusive, for notes and collated authorities. I might also cite Parshall v. State, 62 Texas Crim. Rep., 177; Creach v. State, 70 Texas Crim. Rep., 229; Stanton v. State, 70 Texas Crim. Rep., 519; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 733; Hearne v. State, 73 Texas Crim. Rep., 390, 165 S. W. Rep., 596; Williams v. State, 75 Texas Crim. Rep., 56, 170 S. W. Rep., 708; Whitfill v. State, 75 Texas Crim. Rep., 1, 169 S. W. Rep., 681; Johnson v. State, 76 Texas Crim. Rep., 346, 171 S. W. Rep., 1128.

I do not care to go into the general doctrine laid down by the cases or deduce from them at this late date the general proposition that covers the withdrawal of testimony and its effect after having been erroneously admitted. As I understand this record there was no evidence that was erroneously admitted, so far as the acts and conduct of the prosecutrix and of the defendant himself are concerned. The error was with reference to the *details of the matter* in regard to Rosa Duffey. The withdrawal of the other testimony did not in any way assist the State, and in fact it was withdrawn at appellant's suggestion upon the theory that its admission was error. The details of the Rosa Duffey matter ought not to have gone before the jury, but it was withdrawn, and under these authorities it seems to be not reversible, especially as many of the cases indicate that even though error is shown and the defendant is guilty, and the minimum punishment assessed, it would not be reversible error. This is a doctrine that might be questioned if generally applied, or too generally so. The Menefee case, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138, I suppose, is cited as to the matters elicited from appellant in regard to details of his marriage to and desertion of Rosa Duffey, as well as his neglect of the child. I believe, as I have stated, this was error, but at appellant's request it was all withdrawn from the jury with positive instructions not to consider it for any purpose. In the Menefee case all details of the obnoxious evidence remained before the jury. It was not withdrawn. However, it may be seriously questioned if Menefee's case can be now regarded as the law. I believe it is, but the cases of Agnes Orner and Fry, decided a few days since, seem to me to be in direct conflict with the Menefee case. I dissented in the Orner case, but have not as yet written reasons. I agreed to reversal of the Fry case on ground stated by Judge Harper, but stated that there are other questions which ought to be held equally reversible. I have not as yet written my reasons in that case. It will be observed in that case many extraneous offenses were admitted over appellant's exceptions. It occurred to me and yet occurs to me that those two cases are in direct conflict with the Menefee case. Those offenses and their details in both cases were admitted as original, not impeaching testimony.

I do not care to amplify these matters. As this case is presented under prevailing opinions of this court I concur in the affirmance.