(Court of Criminal Appeals of Texas. June 23, 1916. Rehearing Denied Oct. 4, 1916.)

1. CRIMINAL LAW ☞1128(2)—APPEAL—REVIEW.

Where no excuse is given in the motion for new trial on the ground of newly discovered evidence for not exercising proper diligence, but, in the oral argument before the Court of Criminal Appeals, defendant's counsel states grounds as an excuse for not exercising diligence prior to trial, the court must consider the record as made in the trial court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2953; Dec. Dig. ☞1128(2).]

2. CRIMINAL LAW ☞939(1) — NEW TRIAL — DILIGENCE IN PROCURING EVIDENCE.

New trial will not be granted for newly discovered evidence where no sufficient diligence in attempting to procure the evidence for trial is shown, nor any excuse given for failure to exercise diligence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2318, 2321–2323; Dec. Dig. ☞939(1).]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Pearl Newman was convicted of murder, and she appeals. Judgment affirmed.

J. Vance Lewis, of Houston, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted of murder, and her punishment assessed at five years' confinement in the penitentiary.

[1, 2] No bills were reserved to the introduction of any testimony, and no exceptions were reserved to the charge as given, and no special charges were requested. Appellant's entire contention is based on alleged newly discovered testimony. In the first place, the motion for new trial setting up newly discovered testimony is sworn to by no person, but if we consider the ground, appellant is wholly lacking in diligence, and no excuse is given in the motion for not exercising proper diligence. In the oral argument before this court appellant's counsel would state some grounds as an excuse for not exercising diligence prior to the trial, but we must consider the record as made in the trial court, for that is what the trial court had before it when he overruled the motion. Again, the alleged newly discovered testimony would not tend to support the testimony of appellant on the trial, but would make an entirely different state of facts to that testified to by appellant. In fact there would be an almost direct conflict in her testimony and the alleged newly discovered testimony. As no sufficient diligence is shown, nor excuse given, there was no error in overruling the motion.

The judgment is affirmed.

---

JOHNSON v. STATE. (No. 4074.)

(Court of Criminal Appeals of Texas. May 10, 1916. On State's Motion for Rehearing, June 21, 1916. On Appellant's Motion for Rehearing, Oct. 4, 1916.)

On State's Motion for Rehearing.

1. SEDUCTION ☞42—EVIDENCE.

In a prosecution for seduction, where it was not shown that prosecutrix, who had worked in a laundry, associated with another girl who worked in such laundry, or knew anything about the associates or conduct of such other

girl, the court was correct in excluding the answer of prosecutrix to the question, on cross-examination, whether such other girl became pregnant and made some man marry her.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 73–75; Dec. Dig. ☞42.]

2. SEDUCTION ☞42—EVIDENCE.

The court properly excluded letters and poetry of an indecent and obscene nature written by prosecutrix to defendant more than a year after the commission of the alleged offense; defendant not offering any testimony as to the general reputation of prosecutrix for chastity.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 73–75; Dec. Dig. ☞42.]

On Appellant's Motion for Rehearing.

3. WITNESSES ☞350 — IMPEACHMENT — EVIDENCE.

The court properly refused to permit defendant to ask prosecutrix if she had not been charged in justice court by complaint, some three or four years before, with the theft of a diamond ring, and if, as a matter of fact, she did not steal it and confess to the officers that she had stolen it, no indictment having been presented against prosecutrix, though several grand juries met and adjourned subsequent to the time complaint was made against her.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1140–1149; Dec. Dig. ☞350.]

4. CRIMINAL LAW ☞1169(5) — APPEAL — HARMLESS ERROR.

Where the court withdrew from the jury defendant's testimony, on cross-examination, that he had one of the baby's pictures, there was no reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3141; Dec. Dig. ☞1169(5).]

5. CRIMINAL LAW ☞419, 420(1)—EVIDENCE.

Where defendant did not offer to prove, or claim to have seen anything improper about prosecutrix's conduct, or to have had any personal knowledge of any act of intercourse with another, while the court did not deny defendant the right to prove by any witness he might have been able to produce any act of intercourse with prosecutrix, the fullest latitude in that direction being given him, the court properly refused to allow defendant to answer the question asked by his attorney, "Did you know, or did you hear, of any one having had intercourse with the prosecuting witness?"

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 973, 975, 976, 980–983; Dec. Dig. ☞419, 420(1).]

Davidson, J., dissenting.

Appeal from Criminal District Court, Harris County; C. W. Robinson, Judge.

Nelson A. Johnson was convicted of seduction, and he appeals. Judgment affirmed.

Heidingsfelder's, of Houston, for appellant. John H. Crooker, Cr. Dist. Atty., E. T. Branch, and T. J. Harris, all of Houston, and C. C. McDonald, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of seduction, his punishment being assessed at four years' confinement in the penitentiary.

Prosecutrix testifies to protestations of love by defendant and her reciprocation; that she had never had intercourse with any other man prior to her first act of intercourse with defendant. She says this continued for nearly three years. She gave birth to a child. Its paternity she attributes to defendant. Appellant admits the intercourse, but denies the seduction and promise of marriage. Under his theory the testimony did not dignify the offense as being higher than that of illicit intercourse which would constitute fornication. There are some facts and circumstances in the case elicited from her which tend to show that she may not have been as pure and chaste as the state contends. Some of her association and acts tend to somewhat impair her purity of thought and mind. She denied, however, that she understood the environments to be of an impure nature. It is not the purpose of this opinion to go into a detailed statement of those matters.

This brings up one of the bills of exception which shows defendant offered to prove that one of the girl associates of prosecutrix fell by the wayside and gave birth to a child; that this girl subsequently married the author of her shame. There is also evidence about some other matters. The appellant then offered to prove on cross-examination of the girl that she associated with the girl who married her betrayer subsequently, and after she had given birth to the child. We are of opinion that on another trial this testimony should be admitted. This happened before prosecutrix says her illicit intercourse began with appellant. It has been held in several cases that the unchaste character of the associates of prosecutrix can be shown as affecting her chastity.

There are quite a number of bills of exception to the refusal of the court to permit appellant to introduce in evidence letters written by prosecutrix to himself. The bill shows the court had admitted letters written by defendant to her. These letters should have been introduced. The contents of the letters are remarkably vulgar, obscene, unchaste, and impure, so much so that the trial judge for that reason would not permit them to go to the jury. Another ground why he refused to admit the letters was that they were written after the alleged seduction.

There is also another bill showing some prose and poetry that is as obscene and dirty as is possible to have been written. In all of the cases of seduction that have come before this court no language in any of them has approximated the vulgarity and obscenity of those offered in evidence and rejected by the court. Prosecutrix had testified she had never had intercourse with any other man, but the letters show a familiarity with indecencies and impurities that is not compatible with the thoughts or words of purity or chastity. It may be questioned that in any brothel of the lowest order more indecent language could be uttered. The fact that these matters occurred after the alleged se-

duction is not a reason why they should not be introduced. They bore directly upon the chastity and the credibility of the witness. The jury could well consider that a woman who would use such language as set out in those letters and the expression used in the poetry was of an impure and unchaste mind. They were so impure that the trial judge would not permit them to be read in his court. These matters are, however, all perpetuated in bills of exception. Seduction does not consist in the mere promise to marry, followed by acts of sexual intercourse. The woman must be pure and chaste to be the subject of seduction. It would hardly be contended that an impure and unchaste woman could be seduced by the promise alone of marriage. If so, then the promise to marry a lewd woman would form the basis of seduction. This statute was intended to protect the virtuous and the pure. It was intended to punish the seducer of chaste women. The unchaste and the prostitute are not the subject of seduction. In order to constitute seduction, the purity of a woman must be overcome, led away, and then illicit intercourse occur by reason of promise of marriage. However pure the woman may be under this statute, seduction will not be consummated alone by the act of intercourse. There must still be the further constituent element shown; that is, the chastity. If she is led away by her affection, or for any reason she submits, it would not be seduction unless the promise of marriage also enters into the case. Immorality, fornication, and adultery do not form a basis of seduction. The jury might well believe from reading these letters that she was not, at the time of her first intercourse, a pure and chaste woman. The rejection of this testimony by the court on account of the vulgarity and obscenity is creditable to his high sense of chivalry, but the defendant was on trial for seducing a chaste woman, and any fact that shows her to be of an unchaste and impure character is introducible to show that fact, whether it occurred within a reasonable time before or subsequent to 'the alleged seduction. It has also been held in this state, and correctly, that long-continued intercourse of an illicit nature between the prosecutrix and her alleged seducer may be also evidence of the fact that she was not seduced, and it tends to show the converse. It has the effect, or may, to show that it was not seduction, but fornication. What the result of the verdict would have been with this testimony before the jury may be a matter of speculation. We cannot tell about its result or effect on the jury, because it was not permitted to go to them. The very reason the court gives for exclusion is one of the strongest reasons for its inclusion. Its vulgarity and obscenity does not afford a ground for rejecting the evidence. It affords a stronger reason why the letters should have been introduced. The writer does not care

to place in the jurisprudence of the state the contents of these letters. It would serve no useful purpose, but it may have been of great value to the defendant to show the condition of the woman's mind at the time of her alleged seduction. On another trial this testimony will be admitted in evidence.

There is another bill of exceptions reserved to the action of the court, which will not occur upon another trial. It shows while the appellant was upon the witness stand he was asked with reference to a picture of the child of the prosecutrix. The judge stated that it would be legitimate in connection with certain matters which might tend to induce the jury to believe it was his child by reason of the resemblance to appellant. Subsequently, however, he withdrew the matter from the jury. This character of testimony under the authorities of Texas is not permissible.

We are of opinion that the court was in error, with reference to the letters especially, and the court should have awarded appellant a new trial.

The judgment is reversed, and the cause remanded.

### On State's Motion for Rehearing.

PRENDERGAST, P. J. Upon the urgent insistence of counsel for the state, we have again carefully reviewed this case and the questions upon which it was reversed in the original opinion. We have reached the conclusion that we were in error in the original opinion.

It is unnecessary to recite all of the testimony. That of the alleged seduced girl makes out a clear and strong case against appellant. She is positively corroborated, and amply so, by several witnesses and many circumstances as to every material fact necessary. The promise of marriage was not only positively testified to by the prosecuting witness, but also by her sister and father and an intimate friend of appellant himself. Appellant shows by his own testimony that he frequently saw and knew the girl by sight some 2 or 3 months before he was introduced to her in April, 1911, and that from that time on until June 25th following, when he accomplished her ruin, he assiduously devoted himself to her, calling upon her several times a week and frequently taking her out to different functions, swearing:

"I gradually worked up to the proposition of having intercourse with that girl. * * * I was trying all the time, every time I went out there."

After he succeeded in accomplishing her ruin, he and she both swear that from two to three times, and many times oftener, each week thereafter for a long time he continued to have sexual intercourse with her, she swearing that all this occurred under his repeated promises to marry her at a later date, which was fixed by agreement between them. This continuous relationship existed between

them until September, 1912, when he left the state for Hot Springs, Ark., where he went for treatment for the cigarette habit. He remained away many months on this occasion, the girl claiming that he promised all the time to fulfill his promise to marry her as soon as he got physically and financially able to do so. When he returned to Houston, he resumed his former sexual relationship with the girl, and soon thereafter got her in "a family way." She informed him of it, and continuously pressed him to carry out his promise and marry her, so she testified. He as persistently refused, but kept up his relationship with her until she was about 5 months "gone," and when she persisted that if he would not marry her, a prosecution might ensue, he thereupon suddenly again left the state, and soon learned while out of the state that the officers were after him, and he skipped about over the country evading arrest for about 18 months. We think this record with practical and all reasonable certainty shows that he not only deliberately set about to accomplish the ruin of this girl, and did do so, under his promise of marriage to her, but that he persistently also set about to prostitute, not only her body, but her mind and language also. He succeeded in debauching her body within about 3 months after he set about to do so, but it took him more than a year and a half by his vile and baneful tutorage to prostitute her mind and words, for it was some 16 months after he seduced and debauched her before he succeeded in having her to write to him a letter wherein any indecent or vulgar or profane word was used, and it was some time thereafter before he succeeded in having her to write other worse letters to him, and more than two years till he succeeded in having her write for him the vile and indecent poetry she did. It seems he took particular pains to preserve all these writings by her to him, for on this trial he produced them, had her identify them as having been written by her, and he offered them in evidence. Evidently it took him more than two years under his vile and baneful tutorage to induce this girl to write such documents to him. The latter ones especially are correctly characterized by Judge DAVIDSON in the original opinion.

The testimony further shows, and the jury by the effect of their verdict expressly found, that prior to the time this girl came into the clutches of appellant, she was a chaste and virtuous girl, not only in body, but in words and mind also, and that prior to his ruin of her she had never before had an act of intercourse with any one. The proof also fails to show that prior to appellant's contact with her and training of her, as stated, she ever used any vile, vulgar, indecent or profane language.

[1] The testimony shows that the alleged seduced girl, Ella Braun, for some time before, and a long time after, appellant's connection with her began, was a working girl, thrown on her own resources; that she worked in a laundry in Houston. After she had given her testimony as a witness for the state, on her cross-examination appellant's bill of exceptions No. 2 shows that he asked her:

"Q. Did you know Verna Gecosky at the laundry? A. Yes, sir. Q. Isn't it a fact that she became pregnant and made some man marry her?"

The state objected to this as immaterial. Neither the bill nor record otherwise shows, or attempts to show, that Ella Braun associated with said Gecosky girl otherwise than that they worked at the same laundry. They did not live together. They did not otherwise associate together, and no intimation is made that even while they worked in the same laundry Ella Braun knew anything about the associates or conduct of the Gecosky girl. In approving the bill the court qualified it by stating that the defendant did not, at any time during the trial, prove, or offer to prove, the general reputation of the prosecutrix for chastity was bad, nor was there any evidence in the entire record showing that before she was seduced by defendant she was other than a pure girl. This bill, and the entire record, in no way comes within the principles laid down in Caviness v. State, 42 Tex. Cr. R. 420, 60 S. W. 555, and Jeter v. State, 52 Tex. Cr. R. 212, 106 S. W. 371, nor any other case decided by this court. We were therefore in error in the original opinion in holding that the court erred in excluding the answer of the witness shown by said bill. The trial court was correct in excluding it.

[2] It is true that it has frequently been held by this court that the course of conduct of an alleged seduced girl soon after the claimed seduction and before then, with others, and the language she uses or writes to others about the same time, are admissible, but it has never been held that such matters are admissible when they occur a long time after the alleged seduction, and are not shown to have any connection with the acts of such girl before the alleged seduction, or at some reasonable time soon thereafter. Appellant has a large number of bills to the action of the court in excluding said letters and poetry documents from the jury on the objection of the state. The bills are quite lengthy, and are qualified by a long statement of the judge to each one. It is unnecessary to quote or state the whole of such explanation. We will merely quote this much of it:

"The testimony shows that the prosecutrix was seduced on the 25th day of June, A. D. 1911, and the writing set out in this bill of exceptions was written not to a third person, but to her alleged seducer. The defendant did not offer any testimony from any source as to the general reputation of the prosecutrix for chastity. No witness who testified claimed to have

either had, or to have witnessed, any act of intercourse of prosecutrix with any person other than the defendant. The only attack on her chastity made by defendant consisted in asking her if it was not a fact that she had had intercourse with one Chick Webb, but upon her denial no attempt or offer was made to prove that such was the fact, or that there was any foundation for such a question. The court did not believe that the writing served any legitimate purpose, and it was no defense, and did not tend to support any defense, and had .said writing been connected in any way with any testimony that might raise the issue of her chastity at the time the defendant seduced her, the court would have admitted it; but, the writing being disconnected and so *long subsequent* to the date of the seduction, the court was of the opinion that it had no probative force as tending to show that she was unchaste at the time of her seduction." (Italics ours.)

We were in error in the original opinion in holding that these documents were admissible in evidence. Under the circumstances of this case, we think the action of the trial judge in excluding them was correct. We know of no case that would go to the extent of holding such documents admissible under the circumstances as shown by the record herein.

We, therefore, grant a rehearing in this case, set aside the former reversal of the judgment, and now affirm it.

DAVIDSON, J. I cannot agree to this affirmance.

HARPER, J. As the promise to marry and the first act of intercourse took place in June, 1911, and the first letter offered in evidence by appellant was not written until in September, 1912, and the others subsequent to that time, I concur in the affirmance of the case.

On Appellant's Motion for Rehearing.

PRENDERGAST, P. J. In his motion for rehearing appellant presents some of the same questions which were thoroughly considered and passed upon in the opinion affirming this case. It is unnecessary to again discuss any of them.

There were some questions raised, but not passed upon in the previous opinion. We will now discuss them.

[3] Appellant claims the court erred in not permitting him to ask the prosecuting witness, Ella Braun, in substance, if she hadn't been charged in the justice court by complaint, some three or four years prior to that time, of the theft of a diamond ring, and if as a matter of fact she did not steal it and confess to the officers that she had stolen it. We state this briefly. In approving the bill the court qualified it by stating that defendant's counsel stated that he expected to prove these facts by this witness—

"but the court does not know, and is unable to certify as a fact, that the witness would have testified that she had admitted stealing any ring. The testimony was .excluded by the court for the

reason that no indictment was presented against the witness; several grand juries having met and adjourned subsequent to the time that such complaint was made against her."

The court's ruling was correct. Wright v. State, 63 Tex. Cr. R. 431, 140 S. W. 1105; Williamson v. State, 74 Tex. Cr. R. 293, 167 S. W. 360, and other cases.

[4] While appellant was on the stand the state asked him, over his attorney's objections, if he had one of the baby's pictures, and he answered that he had. The court subsequently expressly withdrew that testimony from the jury, and charged them not to consider it. This would be no such material matter as would justify this court to reverse, even if the court had not withdrawn the testimony; but, under the law as well established, as the court withdrew it, it would present no reversible error in any contingency. Miller v. State, 185 S. W. 38, and cases there cited.

[5] In another bill appellant claims the court erred in not permitting him to answer this question asked by his attorney:

"Q. Did you know, or did you hear, of any one having had intercourse with the prosecuting witness, Ella Braun?"

Upon the state's objection, the court refused to permit him to answer this question. The court, in approving the bill, qualified and explained it as follows:

"That defendant never offered to prove, nor did he claim to have ever seen, anything improper about the conduct of the prosecutrix, or to have had any personal knowledge of any act of intercourse, nor did the court deny the defendant the right to prove, by any witnesses he may have been able to produce, any act of intercourse with prosecutrix. On the contrary, the fullest latitude was given to defendant to prove anything by legitimate evidence that might tend to show that prosecutrix was unchaste before he seduced her. The question as framed and asked as to what he had heard would have called for hearsay evidence."

As qualified, this bill shows no error.

The court did not err in refusing to give two special charges requested by appellant. The court in qualifying each of his bills to the refusal of his charges stated that the testimony did not call for such a charge. The court in a correct charge submitted all the issues raised by the testimony. Appellant made no objection to the court's charge.

The motion is overruled.

DAVIDSON, J. I cannot concur in the disposition of this case. I do not care to write further.